Wilde, J.
We have had considerable difficulty in this case, and, finally, have not all of us been able to agree in opinion. The facts are so complicated, and the agreements and intentions of the parties have been, in some respects, so indistinctly disclosed, that it is not surprising there should have been some hesitation amongst us. A majority of the Court, however, have agreed in the opinion, which I will now state, with our reasons.
* In the argument of the cause, three objections were made by the counsel for the defendant.
1. That the paroi evidence in the case ought not to have been admitted, because it was contradictory to the terms of the deed of the parties.
2. That the paroi agreements are void by the statute of frauds.
3. That the rule of estimating damages, laid down by the judge, is erroneous.
As to the first point, there ran be no doubt that paroi evidence is inadmissible to contradict or vary the terms of a deed. But paroi evidence may be admitted to establish an independent fact, or to prove a collateral agreement incidentally connected with the stipulations of a deed, or other written contract. So presumptions of law, in relation to matters of fact, may be repelled by oral testimony. This rule of evidence has been frequently laid down, and it accords with the maxim, “ Stabit presump tio donee probetur in contrarium.” And it seems reasonable that presumption, which is not founded on the basis of certainty, should yield to evidence, which is the test of truth. It was said by Lord Mansfield, in the case of Brady vs. Cubitt, (1) that all presumptions might be rebutted by every sort of evidence; and it was held, in that case, that an implied revocation of a will by a subsequent marriage and the birth of a child, might be rebutted by paroi evidence. This case has never been overruled, although the grounds of the decision may be considered as, in some respects, shaken by the cases of Doe, ex Bern. Lancashire, vs. Lancashire, (2) Kenebel vs. Scrafton, (3) and Goodtitle vs. Otway. (4) But the general principle, that presumptions may be repelled by oral testimony, has not been controverted In Goodtitle vs. Otway, A, by his will, devised lands to B, and afterwards, upon his marriage, conveyed them to trustees to other uses; and it was held, that paroi testimony was not admissible to show that A, did not intend to revoke his will; the court being of *88 opinion that the conveyance amounted to a revocation by * operation of law, upon the ground of a presumptio juris et de jure not to be repelled by any circumstances to be set up in evidence. And undoubtedly such a presumption, if presumption it may be called, which was but a construction of the deed of conveyance, ought not to have been rebutted by paroi evidence contradictory to the terms of the deed.
In the case of Lake vs. Lake, (5) paroi evidence was admitted to rebut a rule of equity; and in the cases of Lord Altham vs. The Earl of Anglesea, (6) and Roe vs. Popham & Al., (7) it was de-' termined that, if a fine be levied, and no uses are declared, paroi evidence may rebut the resulting use to the conusor in favor of the eonusee.
It seems also to be settled that paroi evidence is admissible to show the consideration of a conveyance, when the same is not particularly expressed in the deed. (8)
These principles and decisions, I apprehend, are well established ; and the only question that can be made is, whether they are applicable to the case under consideration.
The deed of trust of 1805, the terms of which are supposed to be repugnant to the paroi evidence, recites that the contracting parties, holding divers tracts of land in severalty, had come to an agreement to hold the same in trust for each other, in the proportions therein stated; and then follow mutual covenants between the parties, that they will severally stand seised of their respective tracts of land in trust for each other, according to the terms of the contract. This is the substance of the deed; and it is material to remark that it is silent in respect to the consideration. The substance of the paroi evidence is, that it was agreed that the defendant should pay a part of the purchase money due from the plaintiff to Boardman and others, from whom he purchased, on a long credit, some of the land brought into the common stock, and which was to be paid by instalments; and that the defendant, at different times before and after the execution of the deed of trust, promised to pay his proportion of the instalments.
* It is impossible to say that this evidence is repugnant to the deed; for nothing can be collected from the deed, touching the consideration or the payment of the purchase money. It is true that the presumption is, that payment was made, or satisfactorily secured, by each associate, in proportion to his interest in the common property. But this presumption, being a species of *89 evidence in relation to matter of fact, and not arising from, the construction of any clause in the deed, may be repelled by oral testimony.
There would be more difficulty in the application of the rules of evidence, if the deed had set forth a nominal consideration, with an acknowledgment of payment, which is sometimes done. It might, in such a case, be doubted, perhaps, if any additional consideration could be averred. (9) (a) But when the usual clause, in relation to the consideration, is altogether omitted, we think that the agreements of the parties, in this respect, may be shown by the oral proof, without violating any known rule of law; which we should be sorry to break in upon, whatever may be the supposed equity of the case.
As to the second objection, it must be admitted that the original verbal agreement was within the statute of frauds. But it will be remembered that such an agreement is not merely void; for if it be executed, or even partly executed, the parties are not permitted to treat it as a nullity. The statute does not wholly vacate the contract., but only inhibits all actions brought to enforce it. By the consiruction uniformly given to the statute, its operation has been limited to such executory contracts as have been in no substantial part executed. Innumerable contracts have been enforced, in chancery, on this ground ; and a like construction seems to have been recognized by the courts of law, which ought certainly to be adopted here, where we have no chancery powers to enforce the performance of a verbal contract. In the case of Crosby vs. Wadsworth, (10) Lord Ellenborough recognizes this distinction as a well-settled principle, and the judgment of the court appears to turn upon * proof that the paroi agreement set up in that case had been discharged before it had been in any part executed.
As to who,t shall be said to be a part execution of a contract, sufficient to take it out of the statute, there has been some doubt. The general principle is that the act or acts, constituting such part performance, must be such as would not have been done but on account of the agreement; that they be done with a view to perform it, and that they be prejudicial to the performing party. Thus, in the Earl of Aylesford’s case, (11) there was a paroi agreement for a lease of twenty-one years, upon which the lessee entered and continued in possession for six years, after which the earl brought a bill against him, to execute a counterpart for the residue of the *90 term. The lessee pleaded the statute of frauds ; and it was held that the agreement was binding, the same having been partly performed. So the delivery of possession has been considered as a sufficient execution, in part of an agreement, to authorize the court to decree a specific performance. (12)
In the present case, it appears that the plaintiff has wholly performed his part of the agreement. The deed of trust has been executed which secured to the defendant his proportion of the common property. The plaintiff has removed the encumbrance on the lands held in common, and the defendant has received sundry deeds of the common estate to be holden in severalty — he in the mean time, for three years at least, while the hope of a profitable speculation remained, treating the agreement as obligatory. It seems impossible to imagine a stronger case of equity on the one part, or a more manifest attempt, on the other, to shelter fraud under the provision of a statute made for its suppression, (a)
But supposing that the statute of frauds did interpose, to prevent the enforcing of the first agreement; nevertheless, the action may be maintained on the subsequent promise. For it seems that, several years after the deed of trust, and after the defendant had obtained the assignment of several lots * in the tract of land purchased of Boardman by the plaintiff and Make-peace, the defendant became alarmed on account of Boardman’s mortgage, and thereupon promised the plaintiff to settle with him, and to pay his proportion of the instalments, provided the plaintiff would remove Boardman’s mortgage : —soon after which it appears that the mortgage was released, the amount due having been paid by the plaintiff. Now, this promise is obligatory, if it was made on sufficient consideration ; for there is no pretence for saying that it is affected by any of the provisions of the statute of frauds. Nor can there be any doubt, in my apprehension, that sufficient consideration appears, to support the promise. The payment of the mortgage was sufficient, for it relieved the defendant’s land from an encumbrance ; and the moral obligation, imposed upon him by the original agreement, was sufficient, for a moral obligation, although it cannot be enforced by a court of law or equity, is nevertheless a good consideration for an express promise. (13) (b) As if a man *91 promise to pay a just debt, the recovery of which is barred by the statute of limitations ; or if a man promise to perform a secret trust, or a trust void, for the want of writing, by the statute of frauds In such cases, although the promise give a compulsory remedy, where there was none before either in law or equity, yet, as the promise is only to do what an honest man ought to do, the ties of conscience, say the authorities, upon an upright man are a sufficient consideration. So, if there be a benefit to the party promising, or a prejudice or trouble to the party to whom the promise is made, it will constitute a sufficient consideration. On either ground, therefore, the consideration in this case is good, and the promise is valid.
The remaining question is, whether the rule of damages was correctly stilted by the judge.
The objection is that, as the debt due to Boardman was paid by a part of the real estate, held in trust for the joint account of the associates, and at a price exceeding the cash value, a deduction should be made from the defendant’s * instalments, so that his proportion should correspond with such cash value.
If the debt due to Boardman had been jointly due from the plaintiff and defendant, — or if, in consequence of the plaintiff’s conveyance to Boardman, the defendant had been prevented from having his full share in the common property, — there would be great weight in the objection. But the Boardman estate was purchased by the plaintiff on a credit payable by instalments, and it was mortgaged to secure a part of the consideration. The plaintiff was bound to pay the mortgage, and Boardman never had any claim against the defendant. The associates agreed that this estate should be placed in the common fund, if it may be so called, at the price at which it was purchased of Boardman; and they agreed to contribute their proportion to the plaintiff, as the instalments should become due ; and most of the associates, excepting the defendant, have paid accordingly. We see no reason why the neglect of the defendant should give him an advantage over his associates.
The plaintiff has satisfied Boardman, has obtained a discharge of the mortgage, has done all that he originally undertook to perform, viz., he has placed this real estate, free from encumbrance, in the *92 common fund ; and the defendant has no light to inquire into the terms on which this relief was obtained. The misfortunes oí the plaintiff furnish no excuse to the defendant for the breach of his agreement. The defendant has received his share of the. sales, has had a portion of the joint property assigned to him in severalty, and may have his remaining proportion assigned in the residue of the lands, whenever he pleases. He ought, therefore, we think, to be answerable for what he originally undertook to pay, with interest for the non-payment, in nature of damages. That sum has been ascertained by the jury, and the judgment is to be according to the verdict.

 Doug. 31.

 5 D. & E. 49.

 2 East, 530.

 2 H. Bloch. 56.

 1 was.

 Gilb.Rev 16.

 Doug. 25.

 Shep. Touch. 222, 510.

3 D. & E. 474. — W. Black. Rep. 1249. — 1 Johns. 140. — 1 Co. 176, a. (a) Arms vs. Ashley, A Pick. 71. — Howell vs. Delancey, 4 Cowen, 427. — Maigley vs. Hauer, 7 Johns. R. 341.

 6 East, 602.

 2 Strange, 783.

 2 Vern. 455. — Prec. in Chan. 519, 561 — 3 Ves. Jun. 378

 Vide, contra, Kidder vs. Hunt, 1 Pick. 328.

Cowp 290. (b) Vide Barnes vs. Hedley, 2 Taunt. 184.— Lee vs. Muggeridge, 5 Taunt. 36.— Clark vs. Herring, 5 Bin. 33.— Willing vs. Peters, 12 S & R. 177. — Andover S. P Corporation vs. Gould, 6 Mass. Rep. 40. — Salem vs. Andover, 3 Mass. Rep 348. — In Littlefield vs Shee, 2 B. & Ad. 811, Lord Tenterden said, " The doctrine that a moral obligation is a sufficient consideration for a snbseouent promise, is one which should *91 be received with some limitation.” A writer in the Legal Examiner, vol. iii. p. 105, says, “ A review of the cases will, we think, convince our readers that the facts out of which the moral obligation arises must be such, that there is either a benefit to one party or a detriment to the other. On this subject we refer our readers to the cases of Hawkes vs. Sounders, Cowp. 290. — Wennal vs. Adney, 3 B. & P. 249, note. — Atkins vs. Barnwell, 2 East, 506. — Seaman vs. Price, 2 Bingh. 437. —Hyeling vs. Hastings, 1 Ray. 389. — Harris vs. Watson, Peak. 72. — Brown vs. Crump, 1 Marsh 567.” And see Mills vs. Wyman, 3 Pick. 207.