## *The trustees of the parsonage fund in* FRYEBURG *vs.* RIPLEY.

Where divers persons subscribed to a fund for the support of public worship, promising to pay to the trustees of the parish funds the sums subscribed, on condition that the trustees should manage the fund in a certain manner, and apply the income thereof to the support of a congregational minister, and to the payment of the parish taxes which might be assessed on the subscribers;—it was *held* that the promise was binding on the subscribers; the acceptance of it on the conditions prescribed, being an engagement on the part of the trustees to perform those conditions.

The subsequent change of the articles of faith adopted by the church, though in some essential particulars, does not absolve the parties from the obligation of such contract.

*Assumpsit* on three promissory notes made by the defendant, and payable to the plaintiffs; to which the general issue was pleaded. Of the sum demanded, the defendant resisted the payment of only one hundred dollars and interest, being the amount of his subscription to the congregational fund in *Fryeburg*.

It appeared that on the 6th day of *April*, 1822, the defendant availed himself of the provisions of the *Stat.* 1821, *ch.* 135, by withdrawing from the first parish in *Fryeburg*, so far as concerned his liability to pay taxes therein. On the 7th day of *March*, 1823, he subscribed his name and the sum of one hundred dollars, which was now in controversy, to a paper of the following tenor:—" To accomplish the great and important object of the stated ministration of the gospel in the first parish in *Fryeburg*, We, whose names are hereunto annexed, do hereby engage, promise and agree to secure to the trustees of the parsonage fund in said town, and their successors forever, by the first day of *June* next, the sums set against our names respectively; the interest of which is forever to be appropri-

ated to the support of a congregational minister in said parish." On the 9th day of *April* following, this subscription paper was delivered to the trustees, accompanied with the following conditions thereto annexed ;—*first*, that the income of the fund thus created should always be appropriated " for the support of a learned, pious, faithful gospel minister, of the congregational order, settled and ordained over the church and society in the parish aforesaid," and preaching at a certain place, &c. ;—*secondly*, that portions of the interest should be added to the principal, till certain periods, when the income should amount to certain sums ;—*thirdly*, that if the parish should again resort to taxation, the trustees should apply the income, arising from each sum subscribed, to the payment of the taxes assessed on the subscriber ;—*fourthly*, that the subscription-paper, with its conditions, should be recorded on their records, and in the registry of deeds, and a copy left with the parish-clerk ; that they should annually report to the parish the state of these funds ; and that the trustees and their treasurer should be under similar obligations respecting them, as they already were in regard to the parish funds arising from the sale of parsonage-lands ;—and *fifthly*, that the donors might change the security given for the payment of the sums subscribed, by substituting certain others in their stead.

The defendant offered to prove that at the time he made the donation, his wife was a member of the church, and that they, with their family, usually worshipped with the first parish, having no other place of worship ;—that under the ministry of their former pastor their articles of faith and covenant were couched in general terms, though recognizing the doctrine of the trinity, of a final judgment, and of the verity of the holy scriptures ;—that since the subscription aforesaid, the Rev. Mr. *Hurd*, their present minister, who was settled in *September* 1823, with the church, had essentially changed the articles of faith and covenant used in that church, substituting others more particular, extended, and distinctly calvinistic, containing doctrines which neither the defendant nor his wife believed ;—that the Rev. Mr. *Hurd* was settled with the expectation and belief, from his own preaching and declarations, that the sentiments embraced in the old articles of faith, and covenant, should be retained ; but that after

Trustees par. fund in Fryeburg *v.* Ripley.

his settlement, he contributed to aid the church to establish new ones ; and that by this creed he preached against the will, and to the great annoyance of the defendant and his family.

This evidence was rejected by *Parris J.* before whom the cause was tried, and a verdict was returned by consent for the plaintiffs, the case being reserved for the consideration of the court.

*Dana* and *D. Goodenow,* for the defendant, argued that the promise was void in its creation, being merely *nudum pactum.* No act was done by the plaintiffs in consequence of the subscription ; they have suffered no injury, nor has the defendant derived any benefit from the engagement. *Limerick Academy v. Davis,* 11 *Mass.* 113; *New Bedford corp. v. Adams,* 8 *Mass.* 138 ; *Essex turnp. corp. v. Collins, ib.* 192 ; *Farmington Academy v. Allen,* 14 *Mass.* 172 ; *ib.* 94 ; *Holmes v. Dana,* 12 *Mass.* 190 ; *Boutelle v. Cowdin,* 9 *Mass.* 254.

But if there was originally a good consideration, it has failed by the essential change of the articles of faith. The whole undertaking had respect to the articles and covenant then existing ; and proceeded on the implied condition that they should remain. The adoption of others, contrary to this engagement, and to which the defendant cannot in conscience assent, absolves him from all obligation to the plaintiffs, who are merely the trustees of the parish and its church and minister.

*Fessenden,* for the plaintiffs, cited 1 *Com. Contr.* 16 ; 6 *Mass.* 58 ; *Lent v. Padelford,* 10 *Mass.* 230 ; *Davenport v. Mason,* 15 *Mass.* 85 ; *Bowers v. Hurd,* 10 *Mass.* 429 ; *Fisher v. Ellis,* 3 *Pick.* 322 ; *Pembroke v. Stetson,* 5 *Pick.* 506 ; *Amherst Academy v. Cowls,* 6 *Pick.* 427,

Mellen C. J. delivered the opinion of the Court in *Cumberland,* at the adjournment of *May* term in *August* following.

This case presents two questions for our decision. 1. Whether the note declared on was given upon a good and legal consideration ; and if it was, 2. Whether there has been a failure of consideration, whereby the defendant has become discharged from all liability.

As to the first point. The cases cited by the defendant's counsel, have undergone a revision, at least many of them, in the case of *Trustees of Amherst Academy v. Cowls,* and that of *Boutelle v. Cowdin,* has been explained in the case of *Pembroke v. Stetson.* According to these later decisions, the consideration of the note in question can be liable to no objection ; the promise is binding in law, as well as upon the principles of morality. The professed object of those who subscribed to the parsonage fund was to avoid those difficulties and divisions which arise in supporting a minister by parish taxes, and to preserve the interesting connexion between a pastor and his church and people. The subscribers have expressed, in plain terms, the conditions on which their donations are made ; and by these, require of the trustees the performance of several duties, attended with labor and some expense. The acceptance of the donations on these conditions, amounts to an undertaking on the part of the trustees to perform this labor, and incur the necessary expense of recording the list of donations, and the directions of the donors, and furnishing copies as required by them. This acceptance and undertaking of the trustees at the request of the donors, form a good consideration for the note in question. It is a good consideration and sufficient to support a contract, if the party in whose favor the contract is made, forego some advantage, incur some expense, suffer loss, or perform duties in consequence of his placing confidence in the undertaking of the other party. *Sumner v. Williams,* 8 *Mass.* 200 ; *Lent v. Padelford,* 10 *Mass.* 230 ; *Foster v. Fuller,* 6 *Mass.* 58 ; *Davenport v. Mason,* 15 *Mass.* 85. But in addition to this, the donation and promise of payment, were for the benefit of each donor, by securing him from taxation for parochial purposes ; or in case of taxation, by the agreement of the trustees to appropriate so much of the annual interest as would pay his parish tax raised for the support of preaching. The donations were made to an incorporated body capable of receiving them. The defendant made his note for the amount of his donation ; to create a fund for valuable purposes was the object of all the subscribers ; and the purposes were accomplished. We are disposed to adopt the ideas of the court in the case of *Pembroke v. Stetson,* when speaking of the de-

cision in *Boutelle v. Cowdin.* "We cannot believe it was intended by the court to lay down the proposition, that the contributors to a fund for a valuable object, being indulged with credit, instead of making immediate payment, their promise being made to a party capable of receiving it, and compellable by law to apply the proceeds of the fund according to the original intent of the contributors, is void for want of consideration." We would add that we cannot believe such a proposition to be law; we deem it equally binding, where the promisees are compellable by the terms of their own express or implied agreement to apply the proceeds of the fund as above mentioned. The defendant's first objection therefore fails.

But he contends that upon the facts of the case, he is relieved from all liability to pay the contested portion of the note declared on. If the defence is a good one, it must be so either on the ground that the terms and conditions on which he subscribed the $100 in question have been violated without his consent, and to his serious injury; or else that by virtue of our constitutional and statutory provisions he is discharged from such liability.

The terms and conditions on which the defendant and others subscribed to the fund in question are in writing, and compose a part of the contract created by such subscription; of course no parol proof is admissible to shew their extent or meaning, or any expectations on the part of the defendant, operating as motives at the time of signing the subscription paper, and making the contract it contains. Now, upon examination of this paper, we find that the only terms and conditions imposed by the subscribers to the fund were, that the interest should be "appropriated for the support of a learned, pious, faithful gospel minister of the congregational order, settled and ordained over the church and society in said parish," except what relates to the place of worship. Nothing is found in it which has any relation to the articles of faith and covenant then approved and in use in the church, or as to their continuance or alteration. It is not pretended that Mr. *Hurd* was not, at the time of subscription, and ever since has been, a learned, pious and faithful gospel minister, of the congretional order; but the complaint of the defendant is that since he was ordained, the articles of faith have been altered, and that his preach-

ing is in conformity to those articles, and to the great annoyance of the defendant and his family. On view of these facts, we cannot perceive in what respect any of the terms or conditions of the defendant's agreement have been violated or disregarded; and therefore on this point the defence must fail. Other conditions might have been inserted, upon a noncompliance with which the donation should be void and irrecoverable; or if paid, might be reclaimed and recovered back again; but it is not our province to make contracts for the parties, but to give effect to such as they have made.

The next inquiry is whether other circumstances, independent of the terms and conditions of the contract, furnish a valid defence. This, we think, is easily answered. Though by our statute, a man may, by a compliance with its provisions, relieve himself from the obligation into which a corporation, of which he was a member, entered; that is, may leave one parish and join or not join another, and thus free himself from his corporate contract; yet this principle is applicable only in such cases. But in the case before us there is no corporate contract; each subscriber has entered into a personal contract, binding him in his individual capacity. Having done this, he cannot absolve himself from his obligation, nor can the facts of which the defendant complains amount to an absolution. It is true the articles of faith have in some particulars been changed, and the doctrines inculcated by Mr. *Hurd* are different from such as were anticipated at the time of his settlement. Still, whatever effect such a change of sentiments, articles of faith, and inculcated doctrines might have upon a contract entered into between a minister and a parish, in its corporate capacity, it certainly has no influence upon an express personal contract. The opinions and ruling of the judge were correct, and there must be

*Judgment on the verdict.*