# CHESHIRE,

## JULY TERM, A. D. 1853.

## HALE *v.* HANDY.

Where the terms of a contract have been fulfilled, and it has resulted in an obligation to pay money, so that there is nothing but a mere debt or duty to be paid or performed, a general count may be maintained. ·

The plaintiff agreed to deliver to the defendant "one hundred cords of logs." "The timber to be measured to the middle of each scarf in getting the length of the log, and the size to include bark and all." *Held*, that the timber was not to be measured by taking the solid contents of each log, but by adopting the usual mode of measuring wood for fuel.

Where parties assert that certain logs which are the subject of a contract between them should be measured by a third person, his duty is not judicial but ministerial; and evidence is admissible to show that he has made a mistake in his measurement.

Where parties have made a written agreement, evidence of the plaintiff's declarations as to its construction, is not competent to prove that the parties have agreed to a modification of its terms.

ASSUMPSIT. The writ was dated July 23, 1850. The first count was on an account annexed to the writ for one hundred cords of logs. The second count was as follows:

`"Also, for that the plaintiff, at said Nelson, on the twentieth day of August, A. D. 1849, agreed with the defendant to deliver to him, by the side of the road, one fourth of a mile below the stone mill in Harrisville, one hundred cords of logs from certain trees, designated by marking by the plaintiff and defendant on the plaintiff's farm, in Nelson— the timber to be measured by one of the Mr. Harrises, or by Major A. S. Hutchinson, and delivered as aforesaid, in the winter or spring next afterwards, if there should be a suitable run of sledding—the timber to be sawed off, or butted,

Hale *v.* Handy.

except the butt of the first log on each stump, and that to be measured to the middle of each scarf, in getting the length of the log—and the size to include bark and all. In consideration of which agreement, the said Handy then and there promised and agreed with the plaintiff, to pay him three dollars per cord for said logs, as soon as the same should be delivered as aforesaid.

And the plaintiff avers that he did on or before the twenty-second day of April, A. D., 1850, deliver at the place in said agreement set forth, one hundred cords of logs from certain trees designated, as aforesaid, and caused the same to be measured by Milan W. Harris, of all which the said Handy had notice, and he became liable thereby to pay the plaintiff the sum of three hundred dollars, and was then and there requested to pay the same, but refused and still refuses, to the damage," &c.

Plea, the general issue. The plaintiff, in support of his declaration, offered in evidence a written contract, signed by himself and the defendant, of which the following is a copy:

" Harrisville, August 20th, 1849.

This is to certify, that I, John D. Hale, do hereby agree to deliver by the side of the road, one fourth of a mile below the stone mill, in Harrisville, one hundred cords of logs from certain trees, designated by marking by Geo. Handy and myself, on my farm, in Nelson, the timber to be measured by one of the Mr. Harrises, or Maj. A. S. Hutchinson, and delivered next winter or spring as above, if there is a suitable run of sledding; if not, to be delivered as soon as there is sledding sufficient—reserving to myself eight maple trees, such as I may choose on the lot. The timber to be sawed off, or butted, except the butt of the first log on each stump, and that to be measured to the middle of the scarf in getting the length of the log; size is to include bark and all.

In consideration of the above agreement, I, Geo. Handy,

do hereby agree to pay the said John D. Hale, three dollars per cord, as soon as the timber is delivered, and if the said Hale should want fifty or a hundred dollars in money, before it is all delivered, I will pay it when that amount is delivered, by said Hale giving me his note for it, and if the timber is not all delivered next winter or spring, he is to pay interest on the money advanced, until it is all delivered. All to be sound timber."

He also offered evidence tending to prove that, during the winter and spring of 1850, he delivered to the defendant, and the defendant accepted a quantity of logs, which, when measured in the pile, in the usual method adopted in measuring wood for fuel, contained one hundred cords; but which, if measured by taking the solid contents of each log separately, contained considerably less than one hundred cords. And it was admitted that unless the former method of measurement was adopted, the contract, on the part of the plaintiff, had not been fulfilled. Both counts in the declaration related to the same subject matter.

The defendant requested the court to instruct the jury that a cord of logs, under this agreement, was equivalent to one hundred and twenty-eight solid feet of logs, as ascertained by taking the solid contents of each log. The court declined so to instruct the jury; but instructed them that if they were satisfied that there were one hundred cords of logs, as they lay when properly placed in the pile, they were authorized to find their verdict for the plaintiff.

The defendant also objected that the written contract did not support the declaration, but that there was a variance between the plantiff's declaration and proof. The court declined to order a nonsuit. The jury having returned a verdict for the plaintiff, the defendant moved to set the same aside, and for a new trial, on account of the instructions of the court. He also moved in arrest of judgment on account of the variance between the declaration and the proof.

Hale *v.* Handy.

*Chamberlain*, for the plaintiff.

*Wheeler & Faulkner*, for the defendant.

The subject of the contract was not fuel or common wood, in the usual meaning of the term; for the words "logs" and "timber" are used interchangeably in the agreement. The denomination of *cords*, in cubic measure, seems to have come from the *cord*, or *line*, originally used in the measurement, and does not of itself determine the question raised in this case. Webster's Dictionary. *Cord.* That cord measure is in practice most frequently applied to wood, which, from necessity, is measured in the pile, is not denied. But when this necessity ceases, the reason ceases; and when applied to substances that admit of exact measurement, the word may well be taken simply as the equivalent of one hundred and twenty-eight cubic feet, to be ascertained with all practicable precision. This denomination is not ordinarily used in the measurement of timber, but when used, it causes no difficulty, if understood in the sense above stated. But if used in any other sense than as the equivalent of really solid measure, it is believed that it introduces a mode of measurement never yet applied to timber. The difficulty in piling and in measuring accurately in the pile, logs of great size and weight, is sufficiently obvious.

II. But if cord measure, without explanation, might be taken to imply measurement in the pile, even in the case of timber, that interpretation is negatived by the language of the contract. The expressions, "getting the length of the log"—"to be measured to the middle of the scarf"—"size is to include bark and all," &c., clearly indicate that the parties had in contemplation a separate measurement of the logs. It could hardly be necessary to stipulate for including the bark of logs to be measured in the pile.

III. The entire consideration for the defendant's undertaking is not stated in the declaration. The important stip-

ulation that the logs were all to be of sound timber, is entirely omitted. And the plaintiff does not aver a fulfilment of his own undertakings, as set out in the count, except in regard to the delivery and measurement of the logs.

The defendant's undertaking is not correctly set out in the writ. Nothing appears in regard to the stipulation to pay money before the delivery of all the logs.

Where a contract is to be stated in a declaration, unless it be truly stated, the plaintiff cannot recover, and a nonsuit should be entered. *Gwinnett* v. *Phillips*, 3 T. R. 643, and cases there cited.

In assumpsit, the consideration is of so entire a nature, that not only must it be proved to the extent alleged, but an omission to allege any part is fatal, for if any part be omitted, then the basis of the promise is misdescribed. 2 Stark. Ev. 61.

GILCHRIST, C. J. It is contended by the defendant that the judgment should be arrested, because the whole of the consideration for his promise is not stated in the declaration, there being no reference to the stipulation that all the timber was to be sound. But the action is brought to recover the contract price of the timber, and is not for unliquidated damages merely, the first count being on an account annexed to the writ, for one hundred cords of logs. Where a contract has been performed on the part of the plaintiff, and has resulted in an obligation to pay money, so that there is nothing but a mere debt or duty to be paid or performed, a general count may be maintained. *Mitchell* v. *Gile*, 12 N. H. Rep. 390. It is not necessary, therefore, to decide whether the consideration would be sufficiently stated, if nothing but a special count could be sustained.

The important question in the case relates to the mode of measuring the logs. The plaintiff agreed to deliver to the defendant " one hundred cords of logs." Where there is nothing to indicate the mode in which they should be

measured, the usual method adopted in measuring wood for fuel, should be followed, because that would be the general understanding of these words.   Such must be the construction now, unless there be something in the contract to modify it.   But the language of the contract specifying the manner in which the logs are to be measured, which is the matter relied on by the defendant, is as applicable to one method of measurement as to the other, and does not, in our judgment, require the solid contents of each log to be ascertained.

There must therefore be

*Judgment on the verdict.*

At a subsequent trial of the case, on the part of the plaintiff, evidence was introduced, tending to prove that logs were drawn by Hale, and delivered at the place specified in the contract, and that a large part of them were hauled by Handy to his mill, some miles distant.   Before all the logs were delivered at the place specified, and while a part of them still remained at that place, not drawn away by Handy, Hale procured Mr. M. W. Harris, of Harrisville, who was a sworn surveyor of cord wood, to measure the logs he had delivered upon this contract.   Hale and Harris went first to Handy's mill, and found Handy there.   Hale told Handy he had come to measure the logs, and asked Handy if he had any objection to Harris, and he made none.   Handy said if Harris would measure the logs in his way, so as to get at the cubic contents, he had no objection to his measuring them.   A part of the logs were measured at Handy's mill, being chiefly identified by Hale's mark, a part at the place of delivery mentioned in the contract, and the rest upon the sled, as they were hauled through the village of Harrisville, towards that place.   A part of the logs were measured in a pile, and a part were scattered about, so as to render it difficult to measure them.   The scattered logs

were measured separately, and the surveyor made such allowances as he judged proper.

The measure of the logs delivered, as found by Mr. Harris, was one hundred and ten cords and three and three-fourths cord feet.

The parties differed in their construction of the contract. Handy contended, that the dimensions of each log were to be separately ascertained, so as to make the whole solid measure; while Hale contended that the logs were to be measured in a pile, in the usual manner of measuring cords of firewood. It appeared that Harris measured the logs, as firewood is usually measured, making such allowances as he judged necessary to make it equal to well packed wood, and to make all, which was measured, sound logs, free from rots and gnarls.

The defendant offered evidence tending to show that the quantity of logs was materially less than it was found by Harris's measurement. The plaintiff objected to this evidence, on the ground that the parties were bound by the measurement of Harris, as a person designated by the agreement to make it. The court held that the evidence was inadmissible.

The defendant then offered to impeach Harris's measurement, as being made materially too large, by fraud or mistake of said Harris, and for this purpose proposed to show that the logs, when measured separately, measured a little over sixty-six cords, solid measure, and then to show by witnesses, who had measured logs both ways, that sixty-six cords, measured separately, would be equivalent to about eighty-two cords, measured in the pile.

He did not propose to offer any other evidence of mistake or fraud, except, that relating to these measurements, and the measurement of Harris as before stated. To this evidence the plaintiff objected, and the court held it incompetent.

To these rulings the defendant excepted.

Hale *v.* Handy.

The defendant then proposed to show, that after the execution of the written agreement shown in this case, the plaintiff and defendant agreed to a modification of the terms of the writing, in respect to the measurement of the logs; so that the logs should be measured separately, by taking the length and circumference, and thus ascertaining the cubic contents of each log, and making each cord entirely solid. For this purpose he offered evidence of what Hale told third persons, as to the manner in which the logs were to be measured, to the effect, that the logs were to be measured separately, by taking the length and circumference, unaccompanied by any statement of a change of the bargain, or allusion to any such change.

To this evidence the plaintiff objected, and the court held it incompetent.

To this ruling the defendant excepted.

A verdict was taken for the plaintiff, which the defendant moved might be set aside by reason of the foregoing exceptions.

*Cushing,* for the plaintiff.

No objection was made that the logs were not piled up. Measuring logs not piled is a matter of skill and judgment. The party had no right to call in any other person. It was said that Harris was fraudulent or mistaken, and a witness was offered who had measured the logs separately, and who said he could judge what would be the amount of the logs if piled. This was substituting another for him whom the parties had agreed on, and was merely setting his judgment against that of Harris. No fraudulent conduct is shown. To prove a new agreement it was proved only that the plaintiff had said that the logs were to be measured separately.

*Chamberlain,* on the same side.

I. The parties agreed upon the person who was to measure the logs, and are bound by his admeasurement.

II. The evidence offered to show fraud or mistake in Harris was merely the judgment of a stranger, against the admeasurement of the arbitrator selected by the parties.

III. The testimony offered is incompetent to show any change by the parties in their written contract.

*Wheeler & Faulkner*, for the defendant.

The defendant was not bound by the measurement of Harris, unless it was fairly made in good faith. It may be impeached by showing fraud or mistake, and the question as to the quantity of logs would then be for the consideration of the jury, *regarding all the evidence*. The most that can be claimed for the measurement of Harris is, that it should have the effect of an award. When an arbitrator commits gross errors and mistakes, or acts corruptly, his award is not binding. *Bean* v. *Farnum*, 6 Pick. 269. This may be pleaded in bar, and a plea that arbitrators omitted to take into consideration in their award, certain promissory notes which were laid before them, and which the defendant was entitled to claim of the plaintiff, was held good on demurrer in *Bean* v. *Farnum*.

From the nature of the case, no measurement can be more exact than in ascertaining the cubic contents of each log, and when the equivalent in cord measure has been found by actual experiment, this is competent evidence for the jury as to the amount of logs, and as to the question of mistake or fraud in the original measurement. A difference of eighteen cords in the measurement of one hundred cords of logs is not so trifling in amount that the jury would be bound to treat it as a mere difference in judgment between the surveyors. The court erred in rejecting the evidence of the quantity of logs, and especially of the subsequent measurement.

The declarations of the plaintiff subsequent to the execu-

---
Hale *v.* Handy.
---

tion of the written contract, that the logs were to be measured separately, and the cubic contents ascertained, and that the cords were to be solid measure, were competent to be submitted to the jury, as tending to show a modification of the original contract, and were improperly excluded. *Davenport* v. *Mason,* 15 Mass. Rep. 85; 1 Greenl. Ev. § 304.

GILCHRIST, C. J. We have already held that the logs mentioned in the contract are to be measured as firewood, is usually measured for fuel.

It is now contended that Harris is to be regarded as a referee, and that having exercised his judgment and discretion in the matter submitted, his award is to be final and conclusive.

If we consider him as a referee, his award may be impeached for fraud, corruption or mistake. No fraud or corruption are supposed to exist here, but it is alleged that he has made a mistake in his measurement.

An award·may be vacated at common law by evidence of mistake. *Brown* v. *Bellows,* 4 Pick. 192; *Bean* v. *Farnum,* 6 Pick. 269. But this mistake is not an erroneous judgment merely on the merits, for on that point the award of referees is conclusive, *Carey* v. *Wilcox,* 6 N. H. Rep. 177. When the mistake is one simply of a fact not involving the exercise of such a judgment as a tribunal must exercise upon the merits of a question where conflicting claims are to be examined and the credibility of witnesses to be weighed, but is one of mere arithmetical computation, there seems to be no reason why the matter may not be inquired into in a suit at law.

As to the question whether the evidence shows any mistake, the defendant proposed to show that the logs, measured separately, contained over sixty-six cords solid measure, and then he wished to prove by persons who had measured logs in both ways, that sixty-six cords, measured in this way,

would make only about eighty-two cords measured in the pile, Harris having estimated the quantity to be one hundred and ten cords.

Now this is not the opinion of witnesses placed in opposition to the opinion of the referee. It is simply the result of the experience of persons who have had an opportunity to acquire it. They have measured logs in both ways, and such is the fact, as they have found it to exist, and as such it tended to show a mistake, and should have been submitted to the jury.

We have thus far gone upon the ground that Harris was a referee. But we do not consider him as occupying the position of a referee, in the ordinary sense of that word. It is true, he must to a certain extent have exercised his judgment, for it is difficult to suppose a case where that must not be done. But his duty was ministerial rather than judicial in its character. He was to measure a quantity of logs as firewood is usually measured, and to hold that he was invested with the powers of an arbitrator would be to give him a character which, we think, the parties never intended.

The evidence of the plaintiff's declarations must be regarded merely as expressing his view of the true construction of the contract. It by no means shows any agreement with the defendant to modify the contract, and the ruling of the court excluding it was correct. But for the reasons stated above, the plaintiff is not entitled to judgment.

*Verdict set aside.*