Goodrich *v.* Longley & others.

————

## JOSEPH GOODRICH *vs.* ISRAEL LONGLEY & others.

A grant by indenture, in consideration of a fixed sum, of the right to build a dam upon the land of the grantor, the parties agreeing that the amount of damages thereby done by flowing the grantor's land shall be determined by an arbitrator, and the sum so determined shall be in full satisfaction of such damages, does not authorize the grantee, after building one complete dam, to increase its height so as to flow more land of the grantor. And the grantee, for the purpose of showing that the original dam was only the beginning of a higher dam, cannot give in evidence his own declarations of intents and purposes, not connected with and tending to explain or qualify orders and directions to his workmen, although forming part of the same conversation; nor the conversations between himself and the grantor at or after the time of executing the indenture, for the purpose of showing that it was expressly agreed that the dam should be raised to the height to which it was ultimately raised. And if the dam, as originally erected, be four feet high, a question to an expert, whether, in his opinion, to raise water on that mill pond two or three feet would make a reservoir beneficial for practical mill purposes, is immaterial.

ACTION OF TORT for breaking and entering the plaintiff's close in Lunenburg in 1853. The defendants admitted the entry, and justified under a sealed agreement between Goodrich and Longley and others, dated March 9th 1846, the substance of

.which is stated in the margin.* The new trial ordered by this court, in 1 Gray, 618, was had in the court of common pleas, and resulted in a verdict for the plaintiff for nominal damages ; and *Perkins*, J. signed a bill of exceptions, presented by the defendants, the substance of which is stated in the opinion, delivered at September term 1856, by

SHAW, C. J. It was decided when this case was formerly before this court, 1 Gray, 618, that though in the agreement of the plaintiff, authorizing the defendants to erect a dam on his land, there was no express provision as to the height to which the

---

* Goodrich conveys to Longley, Worcester and Hazen, " their heirs and assigns forever, the right and privilege of constructing and building upon the land of said Goodrich, at the outlet of Mashapog Pond, a dam for the purpose of flowing and raising a head of water upon said pond," with covenants of seizin and warranty, and that the grantees, " their heirs and assigns, shall at all times hereafter, without any hindrance or obstruction from the said Goodrich, have the right and privilege of entering upon and passing over the land of said Goodrich, for the purpose of viewing said dam, for making repairs upon and altering the same, and for all other necessary purposes connected therewith," and " shall have full liberty of taking stone upon the land of said Goodrich for the purpose of building and constructing said dam, and that they shall have the right and privilege of taking and digging gravel for the purpose of building said dam, in any place on said Goodrich's land, and hereafter, for the purpose of repairing the same, they shall have the right and privilege of digging gravel out of the southwest side of said outlet and near the same. The said Goodrich conveys said privileges in consideration of the agreement of the said Longley, Worcester and Hazen, hereinafter contained." And the grantees agree to pay Goodrich, " for the privileges and rights herein conveyed by said Goodrich, the sum of two hundred dollars."

" And the parties of the first and second part respectively agree, that if they, the said parties, shall be unable to agree upon the amount of damage which shall be done to said Goodrich by flowing the land of him the said Goodrich, by reason of the building of said dam, Amos Hawes, of Leominster, in said county of Worcester, shall determine the amount of damage so sustained, or which shall be sustained by him, the said Goodrich ; and the parties of the first part agree to pay the sum so determined upon by said Hawes, to said Goodrich, and the said Goodrich agrees to receive the same in full satisfaction for the damage by him sustained in the premises.

" It is the understanding of the parties to this agreement, that the covenants of said Goodrich shall never be so construed as to render the said Goodrich liable for any damage done to any person whatever by reason of raising a head of water upon said pond."

same might be raised, and as to the length of time within which it should be built, and therefore it was at the election of the defendants to build the dam as high, and at such time, as they should think fit, within reasonable limits; yet if, in pursuance of that grant, in the year ensuing its date, they built a dam capable of raising and flowing back the water of Mashapog Pond to any given height, and then left the work several years, it was a full exercise of that election, a full satisfaction of the right granted, and exhausted the defendants' power under that grant.

One consideration in support of that view of the defendants' rights under the grant, is this : The agreement itself fixed the price which the. plaintiff should receive for the land to build the dam upon, and the stone and earth for its construction, which perhaps would not vary much, whether the height should be more or less; but the parties contemplated a further damage by flowing the plaintiff's other land, not taken for the dam. If the parties could not agree on this, it was to be left to Amos Hawes to decide. The amount of such damage would depend wholly upon the height of the dam and the quantity of the plaintiff's land flowed. They could not ascertain, or begin to compute this damage until the height of the dam, and the consequent height of .flowage, should be fixed by the election of the defendants. The agreement looked but to one fixing of this height, and of course one election only; and if the defendants had in 1847 built a dam calculated to raise the water four feet, and by which it had been so raised, they had made their election and exhausted their grant.

The case was ordered to a new trial, to enable the plaintiffs to prove, if they could, that such a dam had been erected, and remained as a four foot dam for several years, before the defendants did the acts now complained of. Such a trial was had, and the evidence given therein appears at great length in the report before us. Several exceptions were taken on both sides; but a verdict for the plaintiff for nominal damages having been returned by the jury, the case comes before us on the defendants' exceptions.

The defendants' counsel asked a witness employed to perform

work on the flume, and to construct it, in 1847, so far as it was
constructed at that time, "for what purposes the defendants
said, in the same conversation," (that is, the conversations in
which the defendants had given directions to the workmen and
persons employed in 1847, by way of orders and directions,)
"for what purpose they were going to have this done." This
being objected to by the plaintiff, "the court ruled that all the
orders and directions given to the workmen, and every thing con-
nected with those orders, tending to qualify or explain them,
might be proved; and the defendants' declarations of purposes
or intents were admitted to that extent; but for any purpose of
introducing what the defendants said beyond that, the defend-
ants could not put the question, to elicit a mere narrative, or
naked declarations of the motives and purposes of the defend-
ants."

It appears to us that this ruling was sufficiently favorable to
the defendants. The question was, as to what the defendants
did in 1847; did they then in fact erect a four foot dam, or
begin the erection of a ten foot dam, if that was within their
right? The matter to be proved was, the acts done in the erec-
tion of a dam. Admitting that orders under which the work-
men did the work were part of the acts, and gave character to
them, and so were admissible, the unexecuted purposes and
intentions of the defendants were not material to any question
before the jury.

2. The instructions to the jury were not excepted to at the
time, and in general seem satisfactory. But the defendants con-
tended that the right of election involved the question of inten-
tion; that the question submitted to the jury should have been
as to the intentions and designs of the defendants in erecting the
structure of 1847; and that the court erred in excluding the de-
signs and intentions of the defendants, in the directions to the
jury, and in ruling that if the structure of 1847 was a dam, or
could be considered as a dam, without regard to purpose, the
defendants' right was exhausted.

We can perceive no error in this. The right of election orig-
inally, no doubt, involved the question of intention; but the

actual question before the jury was, whether that right of election had been exercised by erecting the structure of 1847; though they might, under a mistaken view of their rights, and under a grant indefinite as to time, have intended, at some future time, as they might increase their own works, or assign their rights in part to other parties, to increase and enlarge their first structure.

3. One other exception is thus stated: " The defendants offered to prove the conversations between them and the plaintiff at the time the contract of March 9th 1846 was signed, as to the height of the dam which the defendants were to construct, and at the same interview after the contract was signed, for the purpose of showing that it was expressly agreed that the dam should be raised ten feet; and also to show that it was the understanding of the plaintiff that the dam was eventually to be raised ten feet, and thereby to that extent to affect the construction of the contract." This was objected to by the plaintiff, and rejected by the court as incompetent.

This evidence, in the opinion of the court, was rightly rejected. Its admission would be a violation of that plain principle which prohibits the use of parol evidence to enlarge, diminish, alter or vary the terms of a written contract—a rule of the utmost importance to the rights of contracting parties.

The authorities cited by the defendants in support of a contrary position—*Richardson* v. *Hooper*, 13 Pick. 446; *Munroe* v. *Perkins*, 9 Pick. 298; and *White* v. *Parkin*, 12 East, 578—are all cases where, after a written agreement concluded and finished, a party has been permitted to prove a new subsequent agreement, upon a new and distinct consideration, binding as a contract, by which, assuming the former contract to be in force, the parties agree upon terms which, in their operation, may add to or change the operation of the original contract. But this is a very different thing from offering parol evidence to prove that the original contract was different from that which the written evidence imports.

4. The only other exception worthy of notice is to the refusal of the court to allow the defendants to ask Hawes, who was an expert, " whether, in his opinion, to raise water on Mashapog

Pond to a height of two to three feet, thereby flowing sixty or seventy acres of land, that depth or less would be beneficial as a reservoir of water for practical mill purposes ? " But we are of opinion that the question proposed to be put would have led to an inquiry into facts not material to any issue in this case, and that the court were right in disallowing it.

*Exceptions overruled.*

*C. Allen & N. Wood,* for the defendants, to the point of the admissibility of the defendants' conversations with their workmen, when erecting the structure of 1847, cited *Boyden* v. *Moore,* 11 Pick. 362 ; *Allen* v. *Duncan,* 11 Pick. 308 ; *Milford* v. *Bellingham,* 16 Mass. 108 ; *Thorndike* v. *Boston,* 1 Met. 242 ; *Kilburn* v. *Bennett,* 3 Met. 199 ; *Haynes* v. *Rutter,* 24 Pick. 242 ; *Walton* v *Green,* 1 Car. & P. 621 ; *Reed* v. *Dick,* 8 Watts, 479 ; 1 Greenl. Ev. § 110 ; 1 Stark. Ev. (4th Amer. ed.) 47–49 ; of the conversation at the time of signing the contract, to explain the meaning of the terms used, *Waterman* v. *Johnson,* 13 Pick. 261 ; *Dryden* v. *Jepherson,* 18 Pick. 385 ; *Leland* v. *Stone,* 10 Mass. 459 ; *Pierce* v. *Woodward,* 6 Pick. 206 ; *Storer* v. *Freeman,* 6 Mass. 435 ; *Paige* v. *Stone,* 10 Met. 160 ; *Johns* v. *Church,* 12 Pick. 557 ; *Hall* v. *Tufts,* 18 Pick. 455 ; *Barry* v. *Bennett,* 7 Met. 354 ; *The King* v. *Laindon,* 8 T. R. 379 ; 1 Greenl. Ev. §§ 286– 288 ; 2 Stark. Ev. 1034, *note ; Gray* v. *Harper,* 1 Story R. 574 ; *Brady* v. *Cubitt,* 1 Doug. 31 ; *Davenport* v. *Mason,* 15 Mass. 85 ; of what was said after the contract was signed, *Richardson* v. *Hooper,* 13 Pick. 446 ; *Munroe* v. *Perkins,* 9 Pick. 298 ; *White* v. *Parkin,* 12 East, 578 ; and of the question to Hawes, *Wigglesworth* v. *Dallison,* 1 Doug. 201 ; *Crafts* v. *Hibbard,* 4 Met. 438 ; *Knight* v. *New England Worsted Co.* 2 Cush. 271 ; 1 Greenl. Ev. § 294.

*F. H. Dewey & G. F. Hoar,* for the plaintiff.