JOHN R. DANNER ET AL., Defendants in Error, *v.* AUGUSTUS BERTHOLD, Plaintiff in Error.

### January 24, 1882.

1. Where a husband permanently renounces his marital obligations, removes to a foreign jurisdiction and permanently dwells there, contributing nothing to the support of his wife, and she, during his absence, holds herself out to the world as a *feme sole*, acquires lands with her own earnings, takes a conveyance to herself in fee, and sells the land, describing herself in the conveyance as a *feme sole*, and the purchaser, relying on such recital, and with knowledge of her course of living and dealing, believes that she is a *feme sole*, the husband and wife cannot maintain ejectment against the purchaser without first tendering him the amount of the purchase-money, and all sums expended by him in good faith in erecting improvements on the land.

2. *Semble* that a husband's renunciation of his marital relations and his permanent residence in a foreign jurisdiction clothes the wife with the powers of a *feme sole*, and that she may then convey title to land held by her in fee, without her husband joining in the deed.

ERROR to the St. Louis Circuit Court, LINDLEY, J.
*Reversed and remanded.*

W. M. Eccles, for the plaintiff in error : The grantor is estopped from setting up that the recitals in her deed are false. — *Union Savings Assn.* v. *Kehlor*, 7 Mo. App. 158 ; *Lensendeffer* v. *Smith*, 66 Mo. 80.    Equity will put the parties in *statu quo.* — *Stumpf* v. *Stumpf*, 6 Mo. App. 272.    There can be no recovery in this case until the defendant has been made whole. — *Schaefer* v. *Causey*, 8 Mo. App. 142 ; *Sims* v. *Gray*, 66 Mo. 613 ; *Huff* v. *Price*, 50 Mo. 230 ; *Shroyer* v. *Nichols*, 55 Mo. 264.    Where the husband is beyond the jurisdiction the wife may convey her real estate as if she were a *feme sole.* — *Gallagher* v. *Delargy*, 57 Mo. 30 ; *Rose* v. *Bates*, 12 Mo. 32 ; *Gregory* v. *Paul*, 15 Mass. 31.

E. Parmer and W. M. Kinsey, for the defendants in error : The deeds under which appellant claims, are null and absolutely void, vesting no title whatever in the grantees named herein. — *Huff* v. *Price*, 50 Mo. 228.    The husband is entitled to the possession of land, the legal title to which is vested in the wife, and may recover the same by suit in ejectment in his own name. — Tyler on Eject. 169 ; *Bledsoe* v. *Simms*, 53 Mo. 305 ; *Cooper* v. *Ord*, 60 Mo. 420.    By virtue of his marital rights the husband has an estate of freehold in land of his wife. — *Vallé* v. *Obenhause*, 62 Mo. 81.    In order to give rise to an estoppel by deed, the parties must be *sui juris*, and the instrument so executed as to be binding in law. — Big. on Estop. 276. A married woman is not estopped by her representation that she is a *feme sole.* — Big. on Estop. 489 ; *Concord Bank* v. *Bellis*, 10 Cush. 276 ; *Lowell* v. *Clark*, 2 Gray, 161.    In cases of this character, "equity will not aid [by estoppel] defects which are of the essence of the power, nor supply any circumstance for want of which the legislature has declared the instrument void."    In such cases "equity does not *overturn*, but *follows*, the law." — *Glidden* v. *Strupler*, 52 Pa. St. 400.

THOMPSON, J., delivered the opinion of the court.

This is an action of ejectment. It appears that in 1865, John R. Danner and Nancy A. Robinson were married to each other in St. Louis ; that, in 1867, John R. Danner left his wife, and that they have never since lived together. The evidence is uncertain as to whether he moved to Illinois immediately after the separation, or whether he remained in St. Louis until 1872, and then removed to Illinois. Mrs. Danner remained in St. Louis, and never saw her husband but once after the separation ; that was in 1872, when she went to see him in Illinois. For several years after the separation (perhaps before), she kept a saloon and house of prostitution in St. Louis. In 1870, she had accumulated a little money in this business, and with this money she bought the land in controversy, and had it conveyed to her in fee simple as Nancy A. Danner, and without any other description. She made improvements on the property with her own money. In 1873, desiring to raise some money, she gave a deed of trust on the property to one Gehner, reciting in the deed that she was a widow. In March, 1876, for the purpose of defrauding her landlord out of some $500 which she owed him, she conveyed her equity in the land to one Nolan. In the certificate of acknowledgment the notary recited that " she declared herself single and unmarried." In July, 1876, Nolan conveyed the property by warranty deed to one Hammel. In August, 1876, one of the lots (No. 7) went to sale under the deed of trust, the defendant became the purchaser, and the trustee made a deed to him, again reciting that Nancy A. Danner was a widow. In January, 1877, Hammel and wife conveyed the other lot (No. 8) to the defendant, by a deed of special warranty.

It is thus seen that the title of the defendant is derived wholly from deeds made by a married woman, who stood seised of the land in fee, without the concurrence of the husband, and who sought to give validity to her conveyance

by reciting therein that she was a widow. As a general rule, conveyances attempted to be made by a married woman, are void, and no one can acquire title through them. The judgment in this case, which was for the plaintiffs, was, then, clearly right, unless the circumstances of the case are such as to take the case out of the general rule.

The defendant pleads, as an equitable defence, that, at the time when Mrs. Danner made the conveyances under and through which he claims, she had long lived separate from her husband, engaged in a business scarcely compatible with the existence of the marriage relation, representing herself as a *feme sole*, in which character she bought, improved, and conveyed this land, and carried on all her business ; and that he purchased the land in good faith, believing from her conduct and course of life, and from the recitals in her deeds, that she was a *feme sole*. The weight of the evidence probably supports this defence, but at the same time there is some evidence casting suspicion upon it, and tending to show that before he made the investments, the defendant may have known that Mrs. Danner was a married woman. Nevertheless, we are disposed to take it that upon this record the defendant is entitled to stand as having made out the defence which he has set up.

Thinking so, I confess I have searched long to find some legal or equitable ground upon which the plaintiffs could be thrown out of court. Aside from the legal position and rights of the plaintiffs, it appears, without any contradiction, that Mrs. Danner is the real party plaintiff; that her husband is passive in the matter ; that when written to, he was not ashamed to promise to lend her the use of his name in bringing this suit if she would send him $30. She brought the suit, using his name with hers, without sending him the $30. So far as we can consider her as the real party plaintiff, I confess I have never seen a more impudent case in a court of justice. She stands here in the face of her own deeds, with their false and fraudulent recitals, endeav-

oring to recover this land from an innocent purchaser, who has been misled by her fraud into investing his money in it. The money which she thus obtained was obtained under such circumstances that, if prosecuted in time, she might have been sent to the penitentiary for obtaining money under false pretences; and she is now asking a court of justice to become the instrument through which this fraud shall be consummated. She asks us to give her back the property, without requiring her to return the money which she obtained in parting with it, through a crime in the nature of larceny.

Must we do this? We thought at one time that we might grant the defendant the relief which he seeks in his answer, on a rule which has been declared by several American courts, including our own, that, where a husband permanently renounces his marital obligations, and takes up his residence in a foreign country, or in another state of the Union, his wife is restored to the capacity of contracting, of holding and transmitting property, and of suing and being sued, as a *feme sole*. *Gallagher* v. *Delargy*, 57 Mo. 29; *Rose* v. *Bates*, 12 Mo. 30; *Gregory* v. *Paul*, 15 Mass. 91; *Abbott* v. *Bayley*, 6 Pick. 89; *Gregory* v. *Pierce*, 4 Metc. 478; *Ayer* v. *Warren*, 47 Me. 217; *McArthur* v. *Bloom*, 2 Duer, 151; *Rhea* v. *Renner*, 1 Pet. 105; *Arthur* v. *Broadnax*, 3 Ala. 557; *Mead* v. *Hughes*, 15 Ala. 141, 148; *Wagg* v. *Gibbons*, 5 Ohio St. 580; *Love* v. *Moynehan*, 16 Ill. 277; *Smith* v. *Silence*, 4 Iowa, 321; *Bean* v. *Morgan*, 4 McCord, 148 (overruled; *Bryce* v. *Owens*, 1 Hill (S. C.) 8). The rule is founded in the necessity of allowing the abandoned wife, under such circumstances, to make contracts and obtain credit, in order that she may live, and not be driven to a life of crime for subsistence. It was well expressed by Putnam, J., in the leading case in Massachusetts, in the following language, which our supreme court, in *Rose* v. *Bates* (*supra*), has adopted: " Miserable,

indeed, would be the situation of these unfortunate women, whose husbands have renounced their society and country, if the disabilities of coverture should be applied to them during the continuance of such desertion. If that were the case, they could obtain no credit on account of their husbands, for no process could reach him, and they could not recover for a trespass upon their persons or their property, or for the labor of their hands. They would be left the wretched dependents upon charity, or be driven to the commission of crimes to obtain a precarious support." *Gregory* v. *Paul*, 15 Mass. 91.

In *Gallagher* v. *Delargy* (57 Mo. 29), our supreme court fully upheld the foregoing exception to the common-law rule, and held that, where the husband is an alien, and permanently resides in a foreign country, and his wife resides in this country as a *feme sole*, she may make a valid conveyance of her land, without her husband joining in the deed. As pointed out in *Abbott* v. *Bayley* (6 Pick. 89), there is no sound distinction between the case where the husband who has permanently deserted his wife resides in a foreign country, and the case where he resides in another state of this Union. In the latter case, as in the former, he is equally beyond the process of our courts; she is equally deprived of his protection and support; and there is an equal necessity that she should be allowed to make and take contracts, and to sue and be sued as a *feme sole*. An examination of the cases will show that they proceed upon the ground that the wife is restored to the civil capacity of contracting as a *feme sole*, where two things concur: (1) That the husband has permanently renounced his marital rights and obligations; and (2), that he has permanently placed himself beyond the reach of the process of the courts of the domicile of the wife.

Upon these grounds we should feel inclined to hold, if the question were raised by the record, that the deeds

of Mrs. Danner were good deeds, and that they would still have been good deeds if she had not recited in them that she was a widow.

But we do not think we can apply these principles in the state of the record. It is not asserted in the defendant's answer that Mrs. Danner, by reason of her husband having permanently abandoned her, and taken up his residence in another state, acquired the power to act as a *feme sole;* nor was the evidence, nor were the declarations of law which the learned judge was asked to give, directed to this question. It was an untried question in the case; the learned judge made no rulings in regard to it, because he was asked to make none; and there is nothing, therefore, to put him in the wrong in this respect.

The only questions of law which arise on this record are presented in the following declarations of law which were asked by the defendant and refused by the court: —

" The court declares the law to be that the plaintiffs can not recover in this case, though the deeds made by Nancy A. Danner to defendant's grantors were void because her husband was not joined with her, until the plaintiff pay to the defendant all the purchase-money, with interest, and all expenses and money expended by him in good faith on said premises, paid by the defendant and his grantors.

" The court declares the law to be in this case, that the plaintiff cannot recover the possession unless the deeds made by Nancy A. Danner to defendant and defendant's grantors were void, and if they are void the plaintiffs cannot then recover until they pay back to the defendant the amount of purchase-money paid by him for said property, and all moneys expended by him in good faith for necessary repairs on said property, and that the aggregate amount is to be declared a lien on said property until it is paid.

" The court declares the law to be that if the plaintiff Nancy A. Danner was married at the time she made the deeds upon which the defendant's title rests, and stated in

said deeds that she was a widow at the time she made the deeds, and that the defendant purchased in good faith, relying on said statement in the deeds, and paid his money for the same, then the plaintiffs are estopped from showing that they were married at the time, and that she was a married woman, and that the deeds were void for that reason.

" The court declares the law to be that if the plaintiff Nancy A. Danner represented to the defendant or held out the fact to be that she was a single and unmarried woman, at the time she made the deeds in question, and that he relied on said representations as true when he made the purchase and paid the money therefor, then she is estopped from setting up or showing that she was not single or a widow, but that she was a married woman, and she cannot recover in this case."

It is perceived that all of these declarations of law proceed upon the idea that one or both of the plaintiffs are estopped by the representations in question, from recovering in this action, at least without putting the defendant *in statu quo*, and this seems the substantial question in the case. If we were adjudicating Mrs. Danner's rights alone, we could, indeed, find some modern authority for holding her estopped by the representations which she has made. *Rosenthal* v. *Mayhew*, 33 Ohio St. 155; *Patterson* v. *Lawrence*, 90 Ill. 174. These cases are very much in point; but it may be doubted whether they could be followed under our decisions, or under the rule which generally obtains.

A married woman can only alien her lands in the mode allowed by statute. What she cannot do directly, by reason of incapacity to contract, she cannot do indirectly by an estoppel. The rule of law which lays her under this disability, is intended for her protection, and, like other rules which pertain to the relation of husband and wife, it involves rights which extend beyond the rights of the immediate parties to any lawsuit, — the rights of society and of the

state. If a married woman could, by representing herself to be a *feme sole*, acquire the right to make a valid contract, the disabilities of coverture would be at once swept away. Her husband would coerce her into representing herself as a *feme sole*, and the grantee of the estate would always purchase on the faith of these representations. This has been foreseen and pointed out again and again by the most eminent and experienced judges. It was pointed out by Lord Eldon, in *Jackson* v. *Hobhouse* (2 Mer. 482); by Chief Justice Lowrie, in *Keen* v. *Colman* (39 Pa. St. 299); by Agnew, J., in *Glidden* v. *Strupler* (52 Pa. St. 400, 404), and by Woodward, C. J., in *Petit* v. *Fretz* (33 Pa. St. 118). To the same effect, see *Lowell* v. *Daniels*, 2 Gray, 161; *Cannam* v. *Turner*, 3 Exch. 698; *Dempsey* v. *Tylee*, 3 Duer, 73, 100. The same rule has been applied in the case of infants, and for the same reasons. A fraudulent representation by an infant that he is of age, by which he induces a person to enter into a contract with him, will not estop him, after he becomes of age, from disaffirming the contract. *Conroe* v. *Birdsall*, 1 Johns. Cas. 127; *Brown* v. *McClure*, 5 Sandf. 224.

Frauds of this kind of the wife, in which the husband has not participated, do not, it has been held, estop the husband and wife from recovering in ejectment (*Rumfelt* v. *Clemens*, 46 Pa. St. 455; *Glidden* v. *Strupler*, 52 Pa. St. 400); nor from afterwards conveying a good title to a third person by a deed properly executed and acknowledged (*Kerkland* v. *Hepselgefser*, 2 Grant Cas. 84); nor entitle one who has made improvements in good faith upon the land, to be reimbursed therefor (*Glidden* v *Strupler*, 52 Pa. St. 400, 404); nor raise any other equity in favor of one who has thus been induced to part with his money; for in this respect equity follows the law. *Ibid.; Stevens* v. *Parrish*, 29 Ind. 260.

But the rule may be otherwise where the husband has participated in the fraud, or where, having suffered the wife

to perpetrate the fraud, he comes forward and claims an advantage under it. In such cases, although the wife may not be estopped because of her disability, yet the husband, being under no disability, may be estopped. And this estoppel may prevent him from maintaining an action of ejectment for his wife's lands. For, although his wife may be joined with him in such an action, it is his suit, and not hers. It is hers in the sense that the possession which the judgment gives him will survive to her after his death, and not to his heirs, so that she will succeed to his possession ; but the present right of possession is *his* right, not hers. And, although, in the technical language of the common law, he is said to be seised of the land during the coverture in right of his wife, yet this does not mean that his right of entry is her right ; it means that it is his right, though acquired by him through his marriage with her. Hence a husband may maintain ejectment for his wife's lands in his own name without joining her. *Cooper* v. *Ord*, 60 Mo. 420.

Whatever Mrs. Danner may say in her testimony, this suit is primarily Mr. Danner's suit, and not hers. The question does not arise upon the record, whether or not he is properly a plaintiff in this case. He stands here in court represented by attorneys of the court, and he is presumed to be rightfully here, until their authority to represent him is questioned in the proper way. This being so, although the frauds of Mrs. Danner might not work an estoppel against her, if he were dead or divorced from her, and she were to sue for the land, yet his conduct may have been such as to estop him from so suing ; and, as the suit is a suit to enforce his right, if he is estopped, she, while the coverture lasts, will be equally estopped.

This principle was clearly brought out and applied in the case of *Huff* v. *Price* (50 Mo. 228) ; and it is upon the authority of that case that we desire chiefly to rest our decision in this case. There, the husband stood by and

allowed his wife to make a contract for the sale of lands, of which she stood seised in fee subject to his curtesy, just as Mrs. Danner was seised of the land here sued for. After the purchaser had paid a part of the purchase-money, had been put in possession, and had made valuable and lasting improvements, the husband and wife concluded that they wanted the land back, and wanted also to keep what he had paid them, or what he had paid the wife, for payment to her was the same as payment to him. It is to the credit of the jurisprudence of this state that this demand was not allowed to succeed. The court held that, although the contract may not have been binding upon her, yet it was binding upon him, he having by his conduct adopted it, and that he was estopped from maintaining an action without putting the defendant *in statu quo.* The court said : "In this case the husband stood by and suffered his wife to make a contract for the sale of the entire estate in this land ; and, with his knowledge and consent, the defendant entered into possession under this contract and made valuable and lasting improvements, having paid a part of the purchase-money, which went into his hands, or into the hands of his wife, which is the same thing, as her possession is his. Conceding that she is not bound by the contract, did he not, by his conduct, adopt this contract as his own? And will a court of equity suffer him to recover the possession of this land, without placing the defendant *in statu quo,* by restoring to him the purchase-money he has paid, with interest, and compensating him for the value of the improvements made by him on the land?• The doctrine of equitable estoppel applies to this case so far as the husband is concerned." It was, therefore, held that an account must be taken of the amount of purchase-money paid by the defendant, with interest, and of the value of the improvements made by him on the land ; that the decree should require the husband to pay to the defendant the amount so

ascertained ; and that upon such payment, possession of the premises should be decreed to the plaintiffs.

Has the conduct of Mr. Danner been such as to bring him within the principle of the foregoing case? He has not, indeed, so far as the record shows, stood by or looked on while his wife perpetrated the frauds in the face of which she here seeks to recover. Nor has he knowingly consented to, or ratified, or adopted, anything which she has done. But he has done more than all this. He has permanently renounced his marital obligations, abandoned her in the place where they formerly lived together as man and wife, taken up his residence in another state, where he has long resided without any intercourse with her, leaving her in the meantime to hold herself out to the world as a single woman, and to get a living by prosecuting, in the character of a single woman, a shameful calling, and by herself living a life of shame. The lands in controversy appear to have been purchased with the fruits of this calling, without his knowledge, consent, or interference. Shall he, after having done this, and while still living in a foreign jurisdiction, and still renouncing his marital obligations, assert in our courts his marital rights in this land, to the prejudice of one of our own citizens? We have no difficulty in saying that he shall not.

We have given an unusual length of time to the consideration of this case, because of the importance and difficulty of the questions involved. We have examined many cases which we have not thought it necessary to cite in this opinion. In conclusion, we desire to state again the ground on which we place our judgment. It is this, and only this : We hold that, where a husband, whether through his own fault or the fault of his wife, permanently renounces his marital obligations, abandons his wife, removes to a foreign jurisdiction, and permanently dwells there, contributing nothing to the support of his wife, but leaves her to

make a living as best she may, and, while he is so absent from her, the wife, in order to make her living, holds herself out to the world as a *feme sole*, and in such character acquires land with her earnings while so living and acting, and has the conveyance made to her in fee, and afterwards, for good and valid considerations, makes conveyance of this land to a third party, reciting in the deed that she is a *feme sole*, and such third party purchases the land on the faith of such recital, and from this, and from her known course of living, in good faith believes that she is a *feme sole*, the husband of such married woman cannot, by joining with her in an action of ejectment, afterwards recover such land from such innocent purchaser or his assigns, without first tendering to him or them, the amount which he or they have expended on account of such land, by way of purchase-money, taxes, or valuable improvements made in good faith.

The judgment of the circuit court will be reversed and the cause remanded for further proceedings. We think it will be competent for the court, on application, to order an account to be taken such as the supreme court ordered in the case of *Huff* v. *Price* (50 Mo. 230). Should the question, whether there has been such a permanent renunciation of his marital obligations and residence in a foreign juris-diction by Mr. Danner as restores a wife to the capacity of contracting as a *feme sole*, be properly raised on another trial, and should the evidence show a permanent renunciation and abandonment, then, in our view, it will be competent for the court to render judgment for the defendant.

Reversed and remanded. Judge BAKEWELL concurs; Judge LEWIS is absent.