Wilkerson v. Farnham.

*E. J. Smith, W. S. Shirk* and *F. A. Sampson* for appellants.

*G. P. B. Jackson* and *G. C. Heard* for respondent.

WILKERSON, *Administrator*, v. FARNHAM *et al.*, *Appellants.*

1. **Pleading:** COUNTER-CLAIM. In an action upon a promissory note, damages arising out of a different transaction and constituting a cause of action *ex delicto*, cannot be set up as a counter-claim.

2. **Landlord and Tenant:** IMPROVEMENTS: COUNTER-CLAIM. In the absence of an express promise to pay, no recovery can be had by a tenant for improvements made by him. Where there is an express promise it is a proper subject of counter-claim *ex contractu.*

3. **Pleading:** EVIDENCE. It is a general rule that in ordinary money demands the fact of payment is in the nature of new matter, and by our code inadmissible under a simple denial.

4. ———— : ————. Under a general denial the defending party is always at liberty to disprove and overthrow the contract asserted against him, by proving that it was materially different from the one so asserted.

*Appeal from Pettis Circuit Court.*—Hon. J. P. Strother, Judge.

AFFIRMED.

*E. J. Smith* and *W. S. Shirk* for appellants.

(1) The court erred in admitting and excluding testimony. It was competent to prove by Tucker the value of the stable, and that the same and the damage for being kept out of possession of the lot sold to defendants, was not included in or settled in the note. A note is only *prima facie* a settlement of prior dealings, and the contrary may be shown in action between the original parties to it. The reply was a general denial, and it was error to receive the testimony of Goodwin as to a contract different from that relied on by defendants. Defendants had no notice of any such defense to their claim. There was no evidence to support the court's addition to defendants' first instruction, nor plaintiff's four instructions. (2) When a party agrees to sell and convey, and then refuses, the purchaser may recover for lost profits on his bargain, such as enhanced value of the land, etc. *Kirkpatrick v. Downing*, 58 Mo. 32, and cases cited; *Newark Coal Co. v. Upton*, 22 Am. Law Reg. 483. (3) The defense relied on here, viewed either as set-off or recoupment, is competent, for it arises on contract and grows out of the same matter for which the note sued on was given. *Gordon v. Bruner*, 49 Mo. 570.

*John Montgomery, Jr.,* and *B. G. Wilkerson* for respondent.

(1) The circuit court did not err in its several rulings to the effect that all that part of the answer relating to the tearing down and removing the stable from the lot described in said deed, did not state sufficient facts to constitute any defense. The facts so stated in said answer are not

a defense as a set-off, because they set up a claim for unliquidated damages, neither are they good as a counter-claim. They do not constitute a "cause of action arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action. And they do not constitute a cause of action arising on contract." (2) The second instruction asked by defendants was properly refused. The answer made no claim for rental value. (3) The fourth instruction asked by plaintiff, was properly given. And there was no error in the admission of the testimony of the witness, Goodwin.

MARTIN, C.—This is an action on a promissory note in the sum of $325, dated July 15, 1877, wherein the defendants, under the firm name of Farnham & Gilman, promised to pay to the order of G. R. Smith the amount aforesaid, for rent of a stable and yard for the past year. It bore interest at the rate of ten per cent per annum and was indorsed with certain credits amounting to about $30. As the points involved in this case arise out of the answer which is somewhat unusual in its form and import I will set out the material parts of it in the language of the pleader.

"And for further answer defendants say that on the 25th day of April, 1876, defendants bought of said G. R. Smith the undivided three-fourths of the following described real estate. (Here follows the description). That by the terms of said sale to and purchase by defendants they were to have had and should have had possession of said premises on said April 25, 1876, but same was in possession of one Tucker, a tenant of said Smith, who refused to surrender the same, and kept and held it till the first of September of that same year. That when said Smith saw that he could not give defendants said possession, as he was bound to do, he then offered defendants as a compensation for said possession during that time, that they should have

and retain said stable so reserved in said deed, which defendants agreed to accept, and which defendants say was worth, as it then stood on said ground, $350; but defendants say when said Tucker did give said premises up on September 1st, said Smith forthwith took and removed said stable and carried it away so that defendants were deprived of the same.

And defendants say that they were, at the time of said purchase, engaged in the business of keeping a livery stable, and had given up another stable they had lately occupied, and bought said property of said Smith to use for said purpose and business, and to continue said business, having then on hand a large stock of horses, carriages, etc., and having then a well established business, all of which was all the time well known to said Smith. Then when said parties found out that said Smith could not deliver possession of said premises to defendants, April 25, 1876, in order to enable said defendants to do some business, said Smith built a small stable and some sheds divided off into stalls, and enclosed a wagon yard on certain lots just adjoining that above described and owned by said Smith and rented and agreed to rent the same to defendants for the term of five years, at $25 per month. That defendants did not get possession of said small stable and sheds till July 4th, on account of said default of said Smith, during which time they had to hire their own horses kept and store their carriages, buggies and vehicles. That the note here sued on was given under these circumstances for the rent of said small stables, sheds and wagon yard.

That when defendants got possession of the ground so bought by them from said Smith, which was September 15th, 1876, they forthwith set about to erect thereon a suitable stable and barn wherein to conduct and carry on their said business and erected and completed the same without any unavoidable delay, and only got the same completed so they could occupy it on December 1st, 1876, during all of which time they labored under great inconven-

ience in having to do business in a building, stable and sheds unfit and too small for the same. That after defendants so got into their own stable said Smith represented to them that he had a chance to sell said small stable, sheds and yard with the grounds on which they were, and asked defendants to surrender the same and release him from his contract whereby he had contracted they should hold the same for five years, and defendants having, while in possession of the said small stable, sheds and wagon yards, made considerable improvements on the same in the way of front and back platforms to the said stable, and in grading up and putting in good condition the stalls in the sheds, and in putting up a large gate with high posts leading into said yard, all to the cost and value of $250. Said defendants offered if said Smith would pay them for said improvements they would surrender the said premises to said Smith and release him from his said contract to rent the same longer to defendants, all of which terms said Smith accepted, and he promised so to pay defendants for said improvements, and on those terms defendants gave up possession of said premises to said Smith and so released him from his contract of further renting the same to defendants. By reason of which said Smith became indebted to defendants in said sum of $250."

The answer concludes with a prayer that the value of the improvements and damages be ascertained and applied towards payment of the note sued on and judgment be given for any balance over the amount necessary to satisfy the note. To this answer the plaintiff filed a general denial. The trial resulted in a verdict and judgment for plaintiff in the sum of $285.50, from which the defendants have appealed.

I. The answer, as a pleading under our code or any other known system of procedure, is extremely defective and should have been reformed before trial. Conceding that the defendants were entitled to a trial of such issues as can be fairly evoked from the facts and circumstances stated,

it becomes our task, by no means an easy one, to indicate such issues and determine whether they have been properly tried.    There are two distinct transactions complained of in the form of counter-claims.    One relates to the carrying away of a stable from the premises purchased by defend-ants, while the other relates to improvements made on an-other piece of ground which the defendants held from the plaintiff's intestate as tenants.    So much of the pleading as recites the conveyance of land, reservation of a building thereon and detention of possession after conveyance, is immaterial and superfluous, for the reason that the defend-ants do not assume to ground their counter-claim on the facts so recited.    Undoubtedly the defendants could recover for detention of the possession by action on the covenants in the deed.    But no such action is stated by them.    On the contrary they aver that the damages for such detention were settled by a sale to them of the reserved building.    It is unnecessary for us to inquire whether this sale could be proved up by reason of the statute of frauds, unless it should be clear that the defendants could make the carrying away of the building so purchased by them the subject of a counter-claim to this suit.    Certainly after averring an un-revoked composition and settlement of the damages for detention they could not be allowed to recover for them notwithstanding they may be included in the prayer for judgment.    Thus it is apparent that the only action stated in this part of the answer is an action for taking away the building alleged to have been sold to defendants.    This is an action in tort.    It has nothing to do with the note sued on, which was given for the rental of another piece of ground.    It could not, therefore, constitute a proper coun-ter-claim in an action on the note and the court did not err in excluding all evidence tending to support it.    *Emery v. Railroad,* 77 Mo. 339;  *Barnes v. McMullins,* 18 Mo. 260;  *Dimmock v. Daly,* 11 Mo. App. 354;  *Edgerton v. Page,* 20 N. Y. 281;  *Mayor etc. v. Parker,* 8 Bosw. 300.

II.    In regard to the improvements on the small stable,

sheds and yard, it is apparent that the defendants seek to recover the value thereof upon an express promise of the plaintiff's intestate to pay for them in consideration of a surrender of the leasehold upon which they were made. Outside of some express promise, no recovery could be had for them, the rule being that every tenant repairs and improves upon his own responsibility. This promise was the proper subject of a counter-claim *ex contractu*. The plaintiff, in his reply, contents himself with a simple denial of such contract. It thus becomes incumbent on the defendants to prove it substantially as alleged. It may be conceded that they submitted evidence tending to establish it as alleged. In denial of it the plaintiff submitted evidence tending to prove that his intestate agreed to pay for the value of the improvements in rents of the leasehold, accruing subsequent to the date of the note sued on, and that the defendants occupied the premises thereafter, by his permission, a sufficient length of time to satisfy the demand for said improvements. The defendants objected to this testimony on the ground that the reply, consisting of a simple denial, could not justify evidence of payment, which was in the nature of new matter. The objection was overruled and the evidence admitted. There may be cases in which the fact of non-payment is a fact to be proved in order to sustain the plaintiff's *prima facie* cause of action. But as a general thing, in ordinary money demands, the fact of payment is in the nature of new matter, and inadmissible by our code under a simple denial. The logic of principle and the weight of authority lead to this result. Bliss Code Plead., § 358; *Ennis v. Hogan*, 47 Mo. 513; *Hubler v. Pullen*, 9 Ind. 273; *Stevens v. Thompson*, 5 Kas. 305; *McKyring v. Bull*, 16 N. Y. 297.

But the evidence submitted by plaintiff did not consist of the mere fact of payment, and that portion of it may be disregarded as immaterial to the issue in the case. It was in its nature a denial of the contract sued on. The answer sets out an absolute and unqualified promise to pay

for the improvements. This meant a payment forthwith and in money. Under plea of denial the plaintiff had the right to prove that he agreed that the improvements should be paid in or deducted from the rents accruing subsequent to the note. If such was the contract, then the defendants could not recover on the one alleged by them. Neither could they recover on the one so proved without answering that the plaintiff's intestate had failed or refused to pay according to the contract, or had hindered the defendants in some way from receiving their pay, in the manner provided for in the contract. If he had denied subsequent occupation to defendants or collected the rents to his own use, the action on the contract would be complete by averring such facts. Under a general denial the defending party is always at liberty to disprove and overthrow the contract asserted against him by proving that it was materially different from the one so asserted. My conclusion is that the evidence was clearly admissible under the reply of general denial and that the court did not err in admitting it and in instructing upon it. There being no error, the judgment is affirmed. All concur.