JERE W. CLEMENS, Respondent, v. THOMAS KNOX, Appellant.

St. Louis Court of Appeals, May 22, 1888.

1. LANDLORD AND TENANT—MISREPRESENTATIONS BY LANDLORD.—An assignee of a lease who has covenanted to perform all its terms and stipulations cannot defend against a suit by the lessor for breaches of his covenants, on the ground that the lessor falsely represented to him that the lease was renewed to the defendant's assignors, in consequence of which misrepresentation the defendant has sustained a pecuniary loss, when in fact a copy of the lease was in the defendant's possession and he had all the means of knowledge that the lessor had concerning the fact of renewal ; when the defendant and his assignors have held the premises for the full term of renewal, as contemplated, and all the parties concerned have acted throughout upon an understanding of the fact of renewal and complied with all its terms, until the defendant's breaches complained of.

2. LANDLORD AND TENANT—RENEWAL OF LEASE.—A tenant defendant cannot maintain that his lease has never been renewed, on the ground that no writing evidences a renewal on agreed terms, as contemplated in the original lease, when in fact, some time after the expiration of the original term, the defendant took an assignment of the lease from the former tenants, agreeing in writing to abide by and perform all the terms and conditions therein set forth, and the lessor at the same time gave his consent in writing to the assignment, upon the stipulated conditions.

3. PRACTICE—VERDICT DIRECTED BY THE COURT.—Where the ultimate
   or constitutive facts are undisputed, and a proper verdict will be
   merely the conclusion of the law upon such facts, there is no error
   in a direction to the jury that their verdict shall be in favor of the
   party for whom the judgment of the law so declares.

4. TAXES — WHEN DEEMED TO BE LEVIED. — Under a stipulation
   requiring the lessee to pay "all assessments and taxes   *   *   *
   that may be levied on or claimed from " the leased property during
   the term of the lease, he will be bound to pay all general taxes
   which become payable by law within the duration of the term, and
   all special tax.bills whose issue shall be of a date within the same
   period.

5. PRACTICE—EFFECT OF GENERAL DENIAL.—Under a general denial,
   the defendant may substantially maintain a special defence, in
   disproving the contract asserted against him, by proving that the
   contract was materially different from the one so asserted.
   There can be no just complaint if the failure of a special defence
   be due, not to the rejection of evidence, but to its insufficiency.

APPEAL from the St. Louis Circuit Court, HON.
JAMES A. SEDDON, Judge.

*Affirmed.*

MAURICE MCKEAG, for the appellant : The court
improperly sustained the demurrer of plaintiff to part
of defendant's answer. It appeared by the plaintiff's
petition that as a condition precedent "the rate of rent
for the extended term had to be agreed upon," and it
nowhere appeared in said petition that such agreement
was made. If any of the matter pleaded tendered any
defence, in whole or in part, to the action, the demurrer
was improperly sustained. *Justice v. Town,* 20 Mo.
App. 559 ; *County v. Sappington,* 64 Mo. 72. It was
stated in the answer of defendant substantially, that
Clemens induced Knox to pay six hundred dollars for
improvements, etc., placed by Carroll and Levy, which
by the lease were only bound for rent and taxes, upon
the theory that there was a lease and the right of
removal of the improvements. The improvements are
admitted by defendant, by his demurrer, to be of the
value of one thousand dollars ; that after the defendant

had paid his money and been in possession he was told by Clemens he had no lease, and these improvements of the defendant were converted by Clemens to his own use. The answer also averred that Clemens and Knox agreed there was no lease, and entered into a negotiation for a new lease. All of these matters were well pleaded and a good defence. Bigelow on Estoppel, 578; *Stewart v. Goodrich*, 9 Mo. App. 125; *Yate v. Hines*, 24 Mo. App. 619; *Greenway v. James*, 34 Mo. 328; *Cavender v. Waddingham*, 2 Mo. App. 557. The memorandum signed by Clemens without fixing any rate of rent at which the premises were to be re-let for the proposed renewal term is void for uncertainty. Taylor, L. and T. [8 Ed.] p. 386, sec. 333; *Pray v. Clark*, 113 Mass. 283; *Abeel v. Radcliff*, 13 Johns. 299. The mere facts that the defendant occupied the premises and paid the rate of rent in the lease mentioned, after the expiration of the lease, do not, as a matter of law, show that there was such an agreement as provided for by Clemens in his writing. *Bradford v. Patten*, 108 Mass. 153. Even if there are sufficient averments in the petition to show that there was a renewal, notwithstanding that fact, the averment in the answer that Clemens, through his duly authorized agent, and the defendant Knox, in the early part of the term contemplated by the extension in 1885 and 1886, agreed that there was no lease, etc., was a good defence. Any lease under seal may be surrendered or changed by parol. *Prior v. Kiso*, 81 Mo. 241; *Hutchinson v. Jones*, 79 Mo. 496. The party paying is always at liberty to explain how, why, and in what capacity he pays and the circumstances under which the payments were made, for the purposes of repelling any implication that might be inferable from these payments. Taylor L. and T. [8 Ed.] p. 26, sec. 23. The writing signed by Clemens about the time Carroll sold, June 16, 1880, did not provide that in addition to the rate of rent for the extended term to be thereafter agreed upon, Carroll should pay taxes, assessments, etc., or comply with any

of the stipulations in former lease. It fixed a minimum for the rate of rent, but no maximum, thus reserving in himself the right to do or not to do. This was no agreement as is required by section 3078, Revised Statutes. *King v. Howard*, 27 Mo. 21; *Hug v. Van Bukels*, 58 Mo. 202; *City v. Gas Co.*, 70 Mo. 103. The writing signed by Knox at the time of the assignment only bound him to try and agree as to the rate of rent. Clemens was not bound by his writing, and as no mutual binding existed, neither was bound. Furthermore, Knox signed his writing and paid his money in the belief induced by Clemens of the existence of a lease and of the right of removal of the improvement. These were the acting motives on the part of Knox, but according to Clemens' showing, and in fact, these did not exist; hence, there was a failure of consideration. Kerr on Mistakes and Fraud, 408; *Blair v. Railroad*, 89 Mo. 383, 392; *Yeates v. Hines*, 24 Mo. App. 619. The provision in the lease relied upon by plaintiff is "to pay all assessments and taxes * * * that may be levied on or claimed * * * during the term of the lease," not that might be charged, assessed, or become a lien during the term—assessment, etc., and levy or claimed different things. *Valle v. Fargo*, 1 Mo. App. 344; *Waterman v. Harkness*, 2 Mo. App. 494; *Strohmeyer v. Zeppenfeld*, 28 Mo. App. 268. The special tax bill offered in evidence was issued on the eighteenth day of December, 1886, and paid by Clemens January 27, 1887. It was not competent evidence in this case. The claimed extension expired thirty-first of December, 1886, when demanded, if ever, before the payment on the twenty-seventh day of January, 1887, there is no evidence. No suit was brought on it, and in fact, according to the provision of section twenty-five, of article six, of the scheme and charter of the city of St. Louis, it was not collectible until thirty days from demand of its payment date. The assessment and levy of a special tax is an exercise of the taxing power, and some time is given the owner of the land after the

assessment is made, before a levy can be made for the enforcement of the payment of the assessment. In the general taxes an assessment is made more than a year before any penalty is attached for nonpayment. The special tax, only thirty days from demand, and as between landlord and tenant it is when the taxes may be paid without penalty is the time fixed to determine who shall be liable for them. This is the proper time, under the language of the original lease, if it was in force.

VALLE REYBURN, for the respondent: The court properly sustained plaintiff's demurrer to affirmative matter contained in defendant's answer. *Dougherty v. Matthews*, 35 Mo. 520; *Dunn v. White*, 63 Mo. 186; *Parker v. Marquis*, 64 Mo. 38; *Wilkerson v. Farnham*, 82 Mo. 678; Taylor's Landl. & Ten. [8 Ed.] sec. 551. The amount of rental provided for the renewal period was sufficiently defined, and was established by the acts of the lessor and the assignee of the lease. *Arnot v. Alexander*, 44 Mo. 25; *City v. Gas Co.*, 70 Mo. 111; *Webster v. Nichols*, 104 Ill. 171, 172; Hermann on Estoppel, sec. 1048, p. 1175; *Insurance Co. v. Bank*, 5 Mo. App. 333; s. c., 71 Mo. 58. The special tax bill, being payable December 18, 1886, at its date was "levied on, or claimed from, said lot of ground, during the term of this lease." Rev. Ord. 1887; City Charter, sec. 25, p. 368; sec. 26, p. 369. The lessee, both by payment of the former rate of rental and by payment of taxes, as by the lease provided, as well as by his prior acceptance of the assignment of the leasehold, and his entry thereunder, during the period of extension, and subsequent to the original term, precluded himself from denying, against the plaintiff, the existence of such renewal term. *Insurance Co. v. Bank*, 5 Mo. App. 333; s. c., 71 Mo. 58. The special tax bill bore date December 18, being thirteen days prior to the expiration of the renewal term. It then became a lien due and payable forthwith, though it bore no interest, or, perhaps, only six per cent., till thirty days

had elapsed from the date of the demand for payment. This grace or indulgence vouchsafed by the city charter did not make the amount other than a demand against the property existing, and even then payable, though not then in default, in absence of demand for payment thereof. The lessor was entitled to pay this bill the date of its issuance and sue forthwith for its amount, as the bill was a burden imposed on the property by legal authority ; nay, more, a cause of action accrued to him at once on nonpayment of the bill, even without payment on his own part. Taylor's Landl. & Ten. [8 Ed.] sec. 399.

THOMPSON, J., delivered the opinion of the court.

The plaintiff, by a written lease, demised to one Carroll a lot in the city of St. Louis, for a term of two years and ten months, beginning March 1, 1879, and expiring December 31, 1881, at a rental of four hundred dollars per annum, payable quarterly in advance. The lease contained the following provision :

" That, in addition to the annual rent aforesaid, the said party of the second part, or his legal representatives, shall pay all assessments and taxes, of every description, nature or kind whatsoever, whether general or special tax, that may be levied on, or claimed from, the said lot of ground and buildings thereon by the state or city authorities, or any other legal authorities, during the term of this lease."

The lease further provided :

" It is also understood and agreed, by and between the parties hereto, that any failure on the part of the said James P. Carroll, party of the second part, or his legal representatives, in the payment of the said rent, assessments and taxes, within ten days after the same shall become due and payable, etc., shall make and create a forfeiture of the same."

" At the expiration of the term of two years and ten months, the said party of the second part agrees, for himself, his heirs and representatives, to deliver up

quiet and peaceable possession of said lot of ground and the buildings thereon to said party of the first part, or his legal representatives."

"The said James P. Carroll, party of the second part, and all who hold under him, hereby agree to pay double rent for every day that he or any one else in his name shall hold on to the whole, or any part of said lot of ground or buildings thereon, after the expiration of this lease or after the forfeiture thereof."

"All buildings and improvements made or erected on said lot of ground by the party of the second part, or any one claiming under him, are bound for the payment of all rents, taxes and assessments."

Immediately after the signature of the parties at the foot of the lease, and indorsed thereon, and bearing the same date, appears the following:

"James P. Carroll has the privilege of a five years' extension of his lease after the expiration of the lease this day entered into between him and myself for lot on Broadway, in block No. 606, in the city of St. Louis, for two years and ten months, the rate of rent for the extended term to be hereafter agreed upon between us, however, which shall not be less than the amount now paid by him for the use of said lot.

"St. Louis, Mo.,              JERE W. CLEMENS.

"March 1, 1879."

Following this and endorsed upon the lease was a written consent signed and sealed by Clemens, that Carroll might transfer the lease and the premises therein described to Jonas Isaacs and Jaques Levy, "subject to all the covenants, stipulations and agreements therein contained." Following this was a written assignment, signed and sealed by Carroll, of all his right, title and interest in and to the lease and the premises therein described, to Jonas Isaacs and Jaques Levy. Following this is this endorsement, signed and sealed by Jonas Isaacs alone: "Jonas Isaacs and Jaques Levy hereby promise and agree to comply with all the covenants, stipulations and agreements contained in the within lease." Next

thereafter there is endorsed upon the lease the following :

"I hereby consent that Jonas Isaacs and Jaques Levy may transfer the within lease and the premises therein described to Thomas Knox, subject to all the covenants, stipulations and agreements therein contained. In testimony whereof, I have hereunto set my hand and seal this twenty-fourth day of April, A. D., 1883.                      Jere W. Clemens. [Seal]

"Witness :
        "B. M. Clemens."

Next follows this indorsement.

"For value received, we hereby assign all our right, title, and interest in and to the within lease and the premises therein described, to Thomas Knox. In testimony whereof, we have hereunto set our hands and seals this twenty-fourth day of April, A. D. 1883.

                "Jacques Levy,   (Seal)
                "Jonas Isaacs.   (Seal)

"Witness :
        "B. M. Clemens."

Next thereafter follows this indorsement :

"I hereby promise and agree to comply with all the covenants, stipulations and agreements contained in the within lease. In testimony whereof, I have hereunto set my hand and seal this twenty-fourth day of April, 1883.                      Thomas Knox. (Seal)

"Witness :
        "B. M. Clemens."

The lease, and also the various endorsements above displayed, were executed in duplicate, one copy being retained by the plaintiff, and the other copy being delivered to the defendant by his assignor. Under the lease, Carroll first took possession and held until his assignment to Isaacs and Levy; they then took possession and held until their assignment to this defendant Knox ; he then took possession and held until the end of the renewal term of five years. Each of the tenants paid rent, according to the stipulations of the lease, at

the rate of four hundred dollars per annum, payable quarterly. They also paid the taxes, pursuant to the provisions of the lease, down to the year 1886, being the last year of the renewal period, when the defendant refused to pay the general taxes for that year, and also a special tax bill issued for the reconstruction of the street upon which the lot fronted with granite pavement, which special tax bill was issued and dated on December 18, 1886. The plaintiff paid the general tax bill upon February 15, 1887, and the special tax bill on January 27, 1887, and brings this action to recover the aggregate of the taxes so paid. The defendant had remained in undisturbed possession from the date of the assignment of the lease to him, April 24, 1883, to the period of the trial of the action.

The answer was, first, a general denial, and next the following special defence and counter-claim :

" And for further answer to plaintiff's petition, this defendant avers that said plaintiff Jere W. Clemens, on or about the twenty-fourth day of April, 1883, falsely, fraudulently, and with the intention to deceive this plaintiff, knowing at said time the facts he represented not to be true, represented that the lease originally entered into between Jas. P. Carroll and himself, and referred to in his petition, was, by an agreement between himself and Messrs. Isaacs & Levy, renewed on the first of January, 1882, and the rent for said extension, to-wit, for five years, agreed upon and between the said Isaacs & Levy to be four hundred dollars per annum, payable in quarterly instalments, one hundred dollars each quarter ; that this defendant thought and believed that said representations so made by the said plaintiff were true at the time, and was thereby induced to pay, and did pay, to Messrs. Isaacs & Levy the sum of six hundred dollars, for their interest in and to said lease and the lands and improvements erected by said Carroll and Isaacs & Levy on said lands and premises ; that afterwards, to-wit, on or about October, 1883, and at several

other times in the years A. D. 1884, 1885, and 1886, the said defendant notified this plaintiff, by and through his duly authorized agents, August Bergman & —— Cornet, that he never had consented to the extension of said lease so originally given to P. Carroll, and assigned by Carroll to Isaacs & Levy, and by them pretended to be assigned to this defendant with plaintiff's consent, and had never agreed with said Isaacs & Levy as to the rate of rent for said premises for an extension, and that consequently this defendant Knox was entirely at the mercy of said plaintiff as to the possession of said premises and ownership of the improvements placed on said premises by the said P. Carroll and Isaacs & Levy, which are of the value of one thousand dollars; that, upon inquiry from said Isaacs & Levy, and their examination and the examination of the pretended lease assigned to this defendant by them, and upon the statements of said duly authorized agents * * * the plaintiff found were true, and consented with and agreed with the said plaintiff that he had no lease on said premises, but was subject to the pleasure and at the mercy of the said plaintiff as to the time he might occupy said premises and improvements; that the said defendant was told by said duly authorized agent that the plaintiff would execute a lease to said premises to this defendant for a term of five years from said years 1884, 1885, and 1886, at these times, being the times at which the defendant was notified by the plaintiff through his duly authorized agents that he had no lease, and solicited to enter into a lease with the plaintiff for said premises by them for a term of five years; that this defendant consented and agreed in the years 1884, 1885, and 1886; that the plaintiff executed a lease for five years and presented it to defendant to sign, but said lease was not as agreed upon, but was for five years, from first day of January, 1882; that this defendant refused to sign said lease thus running from the first day of January, 1882, for five years; that plaintiff kept up a negotiation through said duly authorized agents for a lease with

said defendant for said premises until the first of January, 1887, when he at once appropriated the improvements on said premises put there by said P. Carroll and said Isaacs & Levy to himself, and thus prevented the said defendant from removing the same, which he would have had done if the lease had been in existence, as claimed by plaintiff in his petition; that said improvements were of the value of one thousand dollars."

I. The plaintiff demurred to this part of the answer, assigning as a reason that it did not set forth facts constituting a legal defence to the cause of action set forth in the petition. The court sustained this demurrer. The defendant declined to amend, but stood upon the matters set up in his answer, and then went to trial before a jury upon the issue made by the petition and his general denial. The first assignment of error is the sustaining of this demurrer. We are of opinion that this was not error of which the defendant can now complain. The question must be judged by the whole record, and this shows without controversy that the defendant had a copy of the lease at the time he entered into possession, and knew as well as the plaintiff did whether it had been renewed for five years. He dealt with the plaintiff and with Isaacs & Levy at arm's length, and if the plaintiff misrepresented to him something which he had under his very eyes, it is not a fraudulent misrepresentation of which the law will take cognizance. As the whole matter contained in this special defence is built upon the superstructure that the plaintiff fraudulently induced the defendant to pay Isaacs & Levy for their improvements, by making him believe that the lease was renewed for five years, and then appropriated the improvements at the end of the term—the basis of fraudulent representation failing, the whole defence fails. If the defendant had confessed the cause of action and stood upon this defence, its goodness would be judged alone by the facts therein stated, but, having gone to trial upon the issue made by his general denial of the petition, and having appealed from the

judgment there rendered against him, bringing to this court a bill of exceptions which embodies a state of evidence which shows, without any room for controversy, that all the parties to the instrument treated the lease as a renewal at the rental which had been fixed in the original instrument, that he enjoyed the possession of the premises during the remaining period of the term of renewal, paying this rental, and also paying, until the last year, the taxes in accordance with the terms of the lease, and as the instrument itself shows, by the endorsements thereon, that when he entered into possession he covenanted to abide by the terms of the lease—it would be a vain and useless thing for us to reverse this judgment in order that an issue might be joined upon the allegations of this special defence, which allegations the defendant could not possibly prove.

II.    The argument that, because this agreement for a renewal was endorsed upon the lease by the lessor in the form of a *privilege* to the lessee at a rate of rent thereafter to be agreed upon, and that, as no further contract *in writing* was made between the defendant or his assignors and the plaintiff fixing the amount of rent, there was no renewal, is untenable ; because the uncontradicted evidence shows that after the original term had expired and the renewal term had commenced, the lease was assigned by the assignee of the original lessees to the defendant; with the written consent of the lessor, subject to its conditions, which conditions the defendant agreed to abide by and comply with.    This in law was tantamount to an agreement on the part of the plaintiff that the defendant should have the premises for the residue of the term at the same rental fixed in the original lease, subject to the same covenants in regard to the payment of general and special taxes, and to an acceptance of this agreement by the defendant.

III.    As there was no dispute about the essential facts, that the defendant had entered into this agreement and had enjoyed the full benefit of the unexpired

portion of the renewal term, subject to the rent reserved in the original instrument, which was the minimum rent at which, under the terms of the renewal privilege, it might be renewed, there was nothing for the jury to try, and no office of judicial administration remained except to pronounce the judgment of the law upon the undisputed facts. Therefore, the court committed no error in directing a verdict for the plaintiff. In a jury trial the court may direct a verdict for the plaintiff where the ultimate or constitutive facts are not disputed, and where the proper verdict is merely the conclusion of the law upon such facts. In such a case, under any theory of the relative office of judge and jury, the fact that the judge directed a verdict is not prejudicial error, unless the judge directed a verdict which does not embrace the conclusion of the law upon the undisputed facts; and this will be next considered.

IV. Did the court direct the proper verdict upon the undisputed facts disclosed by the record? The renewed term of five years expired on the thirty-first day of December, 1886. Were the general taxes for the year 1886 "levied on or claimed from the said lot of ground" prior to that date? The date at which general taxes become payable is fixed by public law, of which taxpayers must take notice. When general taxes become payable they are, in our opinion, levied upon or claimed from the land against which they are assessed, within the meaning of a covenant in a lease such as the one under consideration. It was, therefore, the duty of the defendant to pay the general taxes for 1886, in compliance with his written agreement endorsed upon the lease, "to comply with the covenants, stipulations and agreements, contained therein." *Strohmeyer v. Zeppenfeld*, 28 Mo. App. 268.

The evidence in this case shows that the special tax bill for reconstructing the adjoining street with granite pavement was issued to the contractor and dated December 18, 1886, but thirteen days before the expiration of the renewed term. By section twenty-five of

article six of the charter of St. Louis, which treats of special tax bills for municipal improvements, it is provided: "Said tax bills shall be and become a lien on the property charged therewith, and may be collected of the owner of the land, in the name and by the contractor, as any other claim in any court of competent jurisdiction, with interest at the rate of ten per cent. per annum, after thirty days from demand of its payment date; and if not paid within six months after such demand, then at the rate of fifteen per cent. per annum from the date of said demand." The court is of opinion that the meaning of this language is that the special tax bill becomes a lien from the date of its issue. We regard the decisions of the Supreme Court in *Anderson v. Holland*, 40 Mo. 600, and in *St. Louis v. Clemens*, 36 Mo. 467, construing the analogous provision in a former charter of the city, as controlling this question. We are, therefore, of opinion that the special taxes here in question were "levied on" the land "during the term of the lease" within the meaning of the covenant of the lease which is the foundation of this action.

The judgment is affirmed. It is so ordered. All the judges concur.

ROMBAUER, P. J., delivered an opinion on motion for rehearing.

The defendant claims that the opinion of the court is in conflict with the decision in the case of *State v. Finn*, 19 Mo. App. 560. Although that case was not cited in the brief of counsel, its bearing upon the present case was examined before the opinion was written. In that case the defendant pleaded the general issue and statute of limitations, and the court erroneously sustained a demurrer to the plea of the statute. As it is well settled in this state that the statute of limitations must be specifically pleaded to be available as a defence the defendant by the erroneous action of the court lost the benefit of a well-pleaded defence. *Hunter v. Hunter*, 50 Mo. 445. In the present case the special

defence set up in defendant's answer might have been established under the general denial, because under a general denial the defending party is always at liberty to disprove the contract asserted against him by proving that it was materially different from the one so asserted. *Wilkerson v. Farnham*, 82 Mo. 672, 679. Moreover it distinctly appears that the defendant sought to establish his special defence by evidence, and failed to do so, not because the evidence was rejected but because it was insufficient.

There is no merit in the motion and it must be overruled. All concur.